[No. 57966-1. En Banc. March 26, 1992.]

*In the Matter of the Estates of*
ROBERT G. HIBBARD, ET AL.

HEIDI L. HIBBARD, *Individually and as Personal Representative, Plaintiff*, v. GORDON, THOMAS, HONEYWELL, MALANCA & O'HERN, ET AL, *Respondents*, THE STATE OF WASHINGTON, *Petitioner.*

738

*Kenneth O. Eikenberry, Attorney General,* and *Glen A. Anderson, Assistant,* for petitioner.

*Lane Powell Spears Lubersky*, by *Anne McDonald* and *Linda E. Blohm*, for respondent Gordon, Thomas, Honeywell, Malanca, Peterson & O'Hern.

*Eisenhower, Carlson, Newlands, Reha, Henriot & Quinn*, by *Ronald A. Roberts*, for respondent Puget Sound National Bank.

SMITH, J. — The State of Washington (State) petitioned for review of a decision of the Court of Appeals, Division Two, which reversed a dismissal on summary judgment in the State's favor by the Pierce County Superior Court. We granted review. The State contends that respondents are not aggrieved by the trial court's order and that they therefore had no standing to appeal to the Court of Appeals. It further contends that the statute of limitations has run on plaintiff's original complaint and that the "discovery rule" does not apply to extend the applicable 3-year statute of limitations. We reverse the Court of Appeals.

Plaintiff in the trial court was Ms. Heidi L. Hibbard (Hibbard), appearing on her own behalf and as personal representative of the estate of her parents, Robert G. and Maxine Hibbard, Deceased.[1] Defendants in the trial court were Puget Sound National Bank (Bank), the original personal representative of the Hibbards' estate; and E.M. Murray and the law firm of Gordon, Thomas, Honeywell, Malanca, Peterson & O'Hern (Gordon Thomas), attorneys for the personal representative. The defendants were served with the original summons and complaint on December 2, 1983. A second amended complaint adding the State as a defendant was filed by Ms. Hibbard on February 10, 1986.

The primary question in this case is whether the "discovery rule" applies and whether the 3-year statute of limitations barred Ms. Heidi L. Hibbard's claims against the State of Washington. Because we answer "no" to the first

---

[1]Estates of Robert G. and Maxine Hibbard, Deceased, and Heidi L. Hibbard v. Gordon, Thomas, Honeywell, Malanca, Peterson & O'Hern, et al., Pierce Cy. cause 84-2-00651-5 (Feb. 3, 1984).

prong of that question and "yes" to the second prong, it is not necessary for us to address the further question whether Respondents Bank and Gordon Thomas had standing to appeal to the Court of Appeals the trial court's summary judgment order dismissing the State from the lawsuit filed by Ms. Hibbard.

On December 6, 1977, Larry W. Knox murdered Robert G. and Maxine Hibbard and allegedly raped their daughter, Ms. Heidi L. Hibbard.[2] Knox was on probation for burglary and had been treated at Western State Hospital and released 7 months prior to the December incident. On December 12, 1977, the Bank was appointed personal representative of the Hibbard estate and Gordon Thomas was retained as attorneys for the estate. Probate was closed on March 4, 1980.

In the fall of 1983, Ms. Hibbard read a newspaper account of this court's decision in *Petersen v. State.*[3] She consulted an attorney in October 1983. The estate of her parents was then reopened and Ms. Hibbard was appointed as personal representative.[4]

On November 23, 1983, Ms. Hibbard filed a claim with the State for personal injuries arising out of her rape by Larry W. Knox on December 6, 1977. The State denied her claim for the reason that it exceeded the statute of limitations, "pursuant to RCW 26.28.015."[5] On December 2, 1983,

---

[2]Larry W. Knox pleaded "guilty" and was convicted of the murders on May 2, 1978. However, the record does not indicate whether rape charges were filed against him.

[3]100 Wn.2d 421, 671 P.2d 230 (1983). Ms. Cynthia Petersen was injured when her automobile was struck by a vehicle driven by Larry W. Knox. It was revealed in the case that Knox was on probation for burglary and had been committed to Western State Hospital where he was treated by Dr. Alva E. Miller. Dr. Miller, aware of Knox's drug abuse and dangerous behavior, released him from Western State Hospital 5 days before the accident.

[4]Pierce Cy. cause 84-2-00651-5. Clerk's Papers, at 50.

[5]This is obviously an erroneous statutory reference, but is not a matter of contention.

Ms. Hibbard served the Bank with a summons and complaint and filed her lawsuit in the Pierce County Superior Court on February 3, 1984.[6] Gordon Thomas was made a defendant prior to consolidation of these actions on February 3, 1986. Ms. Hibbard claimed that the Bank and Gordon Thomas acted negligently in failing to bring suit against the State and Larry W. Knox.[7]

The Bank moved for summary judgment, asking. dismissal of the action based upon the statute of limitations. On January 17, 1986, visiting judge Karen B. Conoley, Kitsap County Superior Court, in an oral decision denied the Bank's motion because there remained an issue concerning the date Ms. Hibbard knew all the elements of her cause of action against the Bank.[8] At this point, the Bank and Gordon Thomas asked that the State be joined as a party.

On January 17, 1986, Ms. Hibbard filed a claim with the State for the wrongful death of her parents. On February 10, 1986, she filed a second amended complaint for damages in the Pierce County Superior Court, adding the State as a party.[9] The complaint acknowledged that the 3-year statute of limitations had expired on December 6, 1980, but asked for judgment against the State in the event the court determined that the statute of limitations had not run against it for its "tortious and outrageous conduct."

---

[6] Pierce Cy. cause 84-2-00651-5. Clerk's Papers, at 50.

[7] An unsigned, unacknowledged and undated "affidavit" by Ms. Hibbard, with the typewritten date "September __ 1985", is part of the record before us. The document cannot be considered in that form.

[8] Pierce Cy. cause 84-2-00651-5. No order for this ruling is in the file. Nor does the file indicate an appeal of the ruling by any party. Report of Proceedings vol. I, at 2.

[9] Pierce Cy. cause 84-2-00651-5. Ms. Hibbard claimed that the State knew or should have known that Knox had violent propensities and that it was negligent in its failure to protect her parents from being murdered by Knox and her from being raped by him. She claimed damages for "emotional distress, personal humiliation, pain, suffering, emotional trauma, and loss of love, companionship, care and guidance of her parents." Clerk's Papers, at 32-38.

On July 27, 1987, the State filed a summary judgment motion for dismissal based on the statute of limitations.[10] Gordon Thomas filed a memorandum opposing the State's motion.[11] On August 4, 1987, the Bank filed a motion for summary judgment, adopting the State's arguments and contending that the claims against the Bank were also barred if the claims against the State were barred by the statute of limitations.[12]

On September 11, 1987, visiting judge David E. Foscue, Grays Harbor County Superior Court, granted the State's motion, but denied the Bank's motion. In his memorandum decision dated September 11, 1987, Judge Foscue ruled that the statute of limitations expired on December 6, 1980, on the claims against the State and that the "discovery rule" did not apply. However, Judge Foscue concluded that a genuine issue of material fact remained concerning the date the cause of action accrued against the Bank.[13] The Bank and Gordon Thomas filed notices of appeal. However, Ms. Hibbard did not appeal.

On December 30, 1988, the Court of Appeals, Division Two, certified the appeal to this court. This court declined certification on January 31, 1989, and returned the case to the Court of Appeals. An order confirming appealability was signed on March 9, 1989.

On August 22, 1989, in reversing the trial court, the Court of Appeals determined that the "discovery rule"

---

[10]Pierce Cy. cause 84-2-00651-5. Clerk's Papers, at 1. The memorandum in support of the motion for summary judgment cites RCW 4.16.080(2), which provides:

"The following actions shall be commenced within three years:

"(1) An action for taking, detaining, or injuring personal property, including an action for the specific recovery thereof, or any other injury to the person or rights of another not hereinafter enumerated[.]"

[11]Clerk's Papers, at 62-67.

[12]Clerk's Papers, at 42-57.

[13]Pierce Cy. cause 84-2-00651-5. The order granting summary judgment was signed October 5, 1987. Clerk's Papers, at 84-86.

applied and that there was an issue of fact whether Ms. Hibbard should have known of her cause of action against the State within the allowable statute of limitations period. The State filed a motion for reconsideration.[14] Following this court's decision in *Gevaart v. Metco Constr., Inc.*,[15] the Court of Appeals issued an order calling for an answer, withdrew its opinion and set the case for reargument.

On January 14, 1991, after reargument, the Court of Appeals again reversed the trial court.[16] The majority (Alexander, J.) held that the discovery rule applied and that there remained a question of fact whether Ms. Hibbard knew or should have known of the State's alleged negligence within the allowable statute of limitations period. The dissent (Reed, J.) concluded that the Bank and Gordon Thomas had no standing to appeal the State's dismissal[17] and that the "discovery rule" did not apply in the case.

On February 13, 1991, the State petitioned this court for review, which we granted on May 8, 1991.

Two orders were entered in this case by the trial court: an order granting the State's motion for summary judgment of dismissal, which determined the issues between Plaintiff

---

[14]The record does not indicate the disposition of this motion.

[15]111 Wn.2d 499, 760 P.2d 348 (1988), where this court held that, under the discovery rule, a cause of action accrues when the injured party knows or should know, by the exercise of due diligence, all the facts necessary to establish the elements of the party's claim.

[16]*In re Estates of Hibbard*, 60 Wn. App. 252, 803 P.2d 1312 (1991).

[17]The majority assumed that the parties had agreed that the Bank and Gordon Thomas were aggrieved parties:

"Only an aggrieved party may appeal to this court. RAP 3.1. The parties have not addressed the right of Gordon, Murray, and Puget Sound to appeal the trial court's dismissal of Heidi and the estate's cause of action against the State. The claims of Heidi and the estate against Gordon, Murray, and Puget Sound fail if the court finds that the action against the State was not time barred. Therefore, *we can only assume that the parties agree that Gordon, Murray, and Puget Sound are aggrieved parties* because their pecuniary rights are substantially affected by the trial court's dismissal of the case against the State. *See Cooper v. Tacoma*, 47 Wn. App. 315, 734 P.2d 541 (1987)." (Italics ours.) *Hibbard*, at 256 n.2.

Hibbard and the State, and an order denying the Bank's motion for summary judgment of dismissal, which determined the issue between Plaintiff Hibbard and the Bank. Plaintiff, Ms. Heidi L. Hibbard, was not a party to any appeal in this case.

■ In ruling on the summary judgment motions, the trial court followed our established rule that:

> A summary judgment motion can be granted only when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. . . . The court must consider the facts in the light most favorable to the nonmoving party, and the motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion. . . .[18]

Additionally, we follow the rule that "[w]hen reviewing an order of summary judgment, this court engages in the same inquiry as the trial court."[19]

Inasmuch as Plaintiff Hibbard did not appeal any of the rulings in this case, there is actually not before this court any basis for reviewing the decision of the trial court on summary judgment between her and the State. However, the Court of Appeals having spoken on the rulings by the trial court, we must necessarily direct our attention to the principal question whether the "discovery rule" applies in this case between Ms. Hibbard and the State.

The general rule in ordinary personal injury actions is that a cause of action accrues at the time the act or omission occurs.[20] "In certain torts, . . . injured parties do not, or cannot, know they have been injured; in [those] cases, a cause of action accrues at the time the plaintiff knew or should have known all of the essential elements of the

---

[18]*Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990) (citing *Highline Sch. Dist. 401 v. Port of Seattle*, 87 Wn.2d 6, 15, 548 P.2d 1085 (1976); *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982)).

[19]*Marincovich*, at 274.

[20]*White v. Johns-Manville Corp.*, 103 Wn.2d 344, 348, 693 P.2d 687, 49 A.L.R.4th 955 (1985).

cause of action." This is an exception to the general rule and is known as the "discovery rule".[21]

This court first adopted the discovery rule in *Ruth v. Dight*.[22] That was a medical malpractice case in which a plaintiff, alleging that her doctor had negligently left a surgical sponge in her abdomen, brought an action against the doctor 23 years after he had performed surgery on her. During those 23 years, plaintiff had sought the help of various physicians who treated her for recurrent pain. However, the sponge was not discovered until she underwent exploratory surgery just a year before she filed suit.

The court recognized the practical and policy considerations underlying statutes of limitations, observing that stale claims may be spurious and generally rely on untrustworthy evidence. The court further observed that society benefits when it can be assured that a time comes when one is freed from the threat of litigation. The court also recognized the remedial goal of the justice system, stating that "when an adult person has a justiciable grievance, [that person] usually knows it and the law affords [the person] ample opportunity to assert it in the courts,"[23] but that that goal is balanced by recognition that compelling one to answer a stale claim is in itself a substantial wrong. The court resolved these competing interests — where neither party is responsible for the delay in discovery of the asserted action — by tolling the statute of limitations and by preserving the remedy. Thus, this court has held that in medical malpractice cases asserting negligence in leaving foreign substances or articles in a surgical wound and which remain in the body after the wound has been closed, "the statute of limitations (RCW 4.16.080(2)), commences to run when the patient discovers or, in the exercise of reasonable care for [the patient's] own health and welfare,

---

[21]*White*, at 348.

[22]75 Wn.2d 660, 453 P.2d 631 (1969).

[23]*Ruth*, at 665.

should have discovered the presence of the foreign substance or article in [the patient's] body."[24]

After *Ruth v. Dight, supra*, this court in *Gazija v. Nicholas Jerns Co.*[25] extended the discovery rule to an action for negligent cancellation of an insurance policy, characterizing the extension a "judicial policy determination". The court determined that application of the discovery rule was warranted because of the fiduciary relationship between plaintiff policyholder and defendant insurance company.[26] Plaintiff in *Gazija* had no way of knowing his insurance policy had been canceled. He relied on a fiduciary relationship and was not aware of the negligent act until after the limitation period had expired. The court then concluded that plaintiff "respondent's cause of action accrued when he first suffered actual loss and had the first opportunity by the exercise of reasonable diligence to discover he had an actionable claim for unauthorized cancellation of the 'floater' policy", and that the cause of action was not barred by the statute of limitations.[27]

Even with extended application of the discovery rule, this court continues to emphasize the exercise of due diligence by the injured party. In *Gevaart v. Metco Constr., Inc.*,[28] this court held that a negligent design and construction claim was barred by the statute of limitations. Plaintiff, while ascending the stairs to her condominium residence, upon

---

[24]*Ruth*, at 667-68.

[25]86 Wn.2d 215, 543 P.2d 338 (1975).

[26]*Gazija*, at 221. The discovery rule has since been applied to other similar professional relationships. *See Peters v. Simmons*, 87 Wn.2d 400, 552 P.2d 1053 (1976) (attorney); *Kundahl v. Barnett*, 5 Wn. App. 227, 486 P.2d 1164 (1971) (surveyor); *Hunter v. Knight, Vale & Gregory*, 18 Wn. App. 640, 571 P.2d 212 (1977) (accountant), *review denied*, 89 Wn.2d 1021 (1978); *Hermann v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 17 Wn. App. 626, 564 P.2d 817 (1977) (stockbroker).

[27]*Gazija*, at 223.

[28]111 Wn.2d 499, 760 P.2d 348 (1988).

reaching the downward-sloping top step, lost her balance and fell backward. The court concluded that since plaintiff knew the step sloped, she could by the exercise of due diligence have determined not only that the step did not conform to code, but also that the slope was a construction defect. We affirmed the Court of Appeals.

In *Ohler v. Tacoma Gen. Hosp.*,[29] this court applied the discovery rule in a medical malpractice and products liability action. Plaintiff knew her blindness since birth was the result of oxygen administered her as an infant, but she did not know the oxygen was administered excessively. She always believed it had been properly administered and was necessary for her treatment as a premature baby. The court held that plaintiff's claim against the hospital "did not accrue until she discovered or reasonably should have discovered all of the essential elements of her possible cause of action, *i.e.*, duty, breach, causation, damages."[30] In reversing a dismissal on summary judgment, the court determined that there was a genuine issue of material fact whether plaintiff knew her blindness was the result of a breach of the hospital's duty.[31] The court concluded that the discovery rule was reasonably extended in the products liability claim in the case because the challenged product was a "medical one whose causal connection to injuries may not be discovered until well after the product has been in use."[32]

The discovery rule has been applied in products liability cases relating to asbestosis.[33] In *White v. Johns-Manville Corp.*, 103 Wn.2d 344, 693 P.2d 687, 49 A.L.R.4th 955

---

[29]92 Wn.2d 507, 598 P.2d 1358 (1979).

[30]*Ohler*, at 511.

[31]*Ohler*, at 511.

[32]*Ohler*, at 514.

[33]*Sahlie v. Johns-Manville Sales Corp.*, 99 Wn.2d 550, 663 P.2d 473 (1983); *White v. Johns-Manville Corp.*, 103 Wn.2d 344, 693 P.2d 687, 49 A.L.R.4th 955 (1985); *Reichelt v. Johns-Manville Corp.*, 107 Wn.2d 761, 733 P.2d 530 (1987).

(1985), in applying the discovery rule to wrongful death and survival actions, the court reasoned that the latent nature of occupational diseases justifies use of the rule. In *Sahlie v. Johns-Manville Sales Corp.*, 99 Wn.2d 550, 663 P.2d 473 (1983), this court, upon certification of two alternative formulations of the *Ohler* rule by the United States District Court for the Eastern District of Washington, rephrased the certified issue to accurately express the rule and concluded that "[i]n a products liability action, the statute of limitation does not begin to run until the plaintiff has discovered or should reasonably have discovered all the essential elements of the action." The rule "requires actual or imputed discovery of all three of these elements [unreasonably dangerous product, a seller in the business of selling the product, and a lack of substantial change in the condition of the product] before the statute of limitation begins to run."[34] In *Reichelt v. Johns-Manville Corp.*, 107 Wn.2d 761, 733 P.2d 530 (1987), the court determined that the plaintiff, because of his own knowledge, his consultations with an attorney, and his OSHA training, reasonably should have known the essential elements of his negligence claim more than 3 years before he filed it and that therefore the claim was barred by the 3-year statute of limitations.[35]

In *North Coast Air Servs., Ltd. v. Grumman Corp.*,[36] a products liability claim certified to this court by the United States District Court for the Western District of Washington, this court concluded that the claimant must have discovered, or in the exercise of due diligence should have discovered, a factual causal relationship between the product and the harm before the statute of limitations had run under RCW 7.72.060(3). This statutory provision was enacted after *Ohler* and states that:

---

[34]*Sahlie,* at 553.

[35]*Reichelt,* at 770-73.

[36]111 Wn.2d 315, 759 P.2d 405 (1988) (plane crash attributed to pilot error was later found to be due to mechanical defect).

Subject to the applicable provisions of chapter 4.16 RCW pertaining to the tolling and extension of any statute of limitation, no claim under this chapter may be brought more than three years from the time the claimant discovered or in the exercise of due diligence should have discovered the harm and its cause.[37]

However, the court in *Grumman* indicated that the statute begins to run upon discovery that a defective product caused the harm and not simply when the apparent cause of the harm is discovered.

In *U.S. Oil & Ref. Co. v. Department of Ecology*,[38] this court applied the discovery rule to an action involving a self-reporting regulatory scheme for effluent discharges. "Where self-reporting is involved, the probability increases that the plaintiff will be unaware of any cause of action, for the defendant has an incentive not to report it."[39] Therefore, the court concluded, the discovery rule should be applied where plaintiff "lacks the means and resources to detect wrongs within the applicable limitation period."[40] The court noted that if the discovery rule had not been applied, "the plaintiff would have been denied a meaningful opportunity to bring a warranted cause of action."[41]

Although there has been increased application of the discovery rule by this court, we still follow the reasoning of *Ruth v. Dight*.[42] Application of the rule is limited to claims in which the plaintiffs could not have immediately known of their injuries due to professional malpractice, occupational

---

[37]RCW 7.72.060(3).

[38]96 Wn.2d 85, 633 P.2d 1329 (1981).

[39]*U.S. Oil*, at 93.

[40]*U.S. Oil*, at 93-94. *See also Kittinger v. Boeing Co.*, 21 Wn. App. 484, 585 P.2d 812 (1978) (libel action which arose out of confidential business memoranda where plaintiff had no means to discover that a cause of action existed).

[41]*U.S. Oil*, at 93.

[42]75 Wn.2d 660, 453 P.2d 631 (1969).

diseases, self-reporting or concealment of information by the defendant. Application of the rule is extended to claims in which plaintiffs could not immediately know of the cause of their injuries.

■ Respondent Gordon Thomas argues that the discovery rule should apply to medical malpractice claims even where the plaintiff is an injured third party, asserting that the absence of direct contact between Dr. Alva E. Miller, the psychiatrist, and Ms. Hibbard favors application of the discovery rule. However, under *Gazija*, the court applied the discovery rule to professional malpractice claims because of a fiduciary relationship between the injured party and the alleged defendant.[43] The discovery rule is justified where that relationship exists and the plaintiff is unaware of the injury. In this case, because no such relationship existed, application of the discovery rule is not justified. Furthermore, the plaintiff, Ms. Hibbard, has not appealed the decision of the trial court. Only Respondents Gordon Thomas and the Bank are appealing it. Neither of them can claim a fiduciary relationship with Dr. Miller and neither of them was injured by any alleged malpractice affecting Ms. Hibbard.

Respondent Gordon Thomas also claims that the discovery rule is applicable in this case because of active concealment by the State and because of Gordon Thomas' own justifiable lack of information. In support of that contention, Gordon Thomas points to the State's objection to its inspection of materials designated in respondent's subpoena duces tecum. However, the subpoena was not filed until September 1987, nearly 10 years after the Hibbard murders and alleged rape occurred (December 6, 1977). There is nothing in the record to indicate that prior to that time any attempt was made by respondents or plaintiff to determine the liability of the State. This case is thus distinguishable from the cases cited by respondents, *U.S. Oil & Ref. Co. v. Department of Ecology*[44] and *Kittinger v. Boe-*

---

[43]*Gazija v. Nicholas Jerns Co.*, 86 Wn.2d 215, 543 P.2d 338 (1975).

[44]96 Wn.2d 85, 633 P.2d 1329 (1981).

*ing Co.,*[45] in which plaintiffs relied on the defendant's reporting or in which there was active concealment by the defendant. In *Ruth v. Dight, supra,* in which this court first applied the discovery rule, plaintiff actively pursued investigation of the cause of her pain by repeatedly seeking medical help.[46] Applying our prior decisions to this case, we conclude that the discovery rule is not applicable.

Respondent Gordon Thomas also contends that the discovery rule is applicable in this case because plaintiff (Ms. Hibbard) has filed a wrongful death action against the State. However, in *White v. Johns-Manville Corp., supra,* in applying the rule to a wrongful death claim, the court reasoned that use of the rule was justified because of the latent nature of occupational diseases which was the basis for the claim.[47]

Both respondents Gordon Thomas and the Bank argue that the trial court's reliance on *Zeleznik v. United States,*[48] a federal case, is in error because formulation of the discovery rule by the federal courts is different from formulation by the Washington courts. They argue that because federal cases hold that a claim accrues when the injured party learns of the injury and its cause, federal interpretation of the discovery rule is stricter than the interpretation by this court. However, in *Ohler,* this court stated that its holding accorded with malpractice rulings under the Federal Tort Claims Act.[49] Furthermore, the Legislature, concerned that the *Ohler* rule (postponing accrual of an action until plain-

---

[45]21 Wn. App. 484, 585 P.2d 812 (1978).

[46]*Ruth v. Dight,* 75 Wn.2d 660, 453 P.2d 631 (1969).

[47]*White v. Johns-Manville Corp.,* 103 Wn.2d 344, 693 P.2d 687, 49 A.L.R.4th 955 (1985).

[48]770 F.2d 20 (3d Cir. 1985) (a wrongful death action in which the court did not apply the discovery rule to postpone accrual of the statute of limitations until plaintiffs learned of involvement by the Immigration and Naturalization Service).

[49]*Ohler v. Tacoma Gen. Hosp.,* 92 Wn.2d 507, 511, 598 P.2d 1358 (1979).

tiff reasonably knows all the essential elements of a possible cause of action) would unjustifiably extend a statute of limitations period, modified the rule by enacting RCW 7.72.060(3) to provide that "no claim under this chapter may be brought more than three years from the time the claimant discovered or in the exercise of due diligence should have discovered the harm and its cause."[50] This formulation parallels the federal rule.

Respondents Gordon Thomas and the Bank argue further that the trial court's summary judgment order was in error, claiming there is a genuine issue of material fact concerning when Ms. Hibbard knew or should have known the essential elements of her cause of action. However, that order concluded only Plaintiff Hibbard's case against the State and she did not appeal it.[51]

Petitioner State contends that the discovery rule is not applicable when all facts essential to maintaining a cause of action could be reasonably determined; and that the rule should be clarified so that the statute of limitations is tolled only until plaintiff knows an injury exists, unless there is objective evidence that plaintiff could not have discovered a factual element essential to the claim.

Recognizing our prior decisions and the policy behind the discovery rule, we conclude that, in this case, a correct formulation of the rule is that a cause of action accrues when a claimant knows, or in the exercise of due diligence should have known, all the essential elements of the cause of action, specifically duty, breach, causation and damages.[52]

Neither Ms. Heidi L. Hibbard nor the Estates of Robert G. and Maxine Hibbard, Deceased, plaintiffs in the trial

---

[50]*North Coast Air Servs., Ltd. v. Grumman Corp.*, 111 Wn.2d 315, 325, 759 P.2d 405 (1988).

[51]Pierce Cy. cause 84-2-00651-5. The order reads "that the State of Washington's motion for summary judgment of dismissal is granted."

[52]*Gevaart v. Metco Constr., Inc.*, 111 Wn.2d 499, 760 P.2d 348 (1988). *See also Ruth v. Dight*, 75 Wn.2d 660, 453 P.2d 631 (1969); *Ohler v. Tacoma Gen. Hosp.*, 92 Wn.2d 507, 598 P.2d 1358 (1979).

court, have appealed from or sought review of the adverse action against them. They are therefore not parties to the action in the Court of Appeals or before this court.

We reverse the Court of Appeals and affirm the decision of the trial court which found that the "discovery rule" did not apply to the State in this case and that the negligence action against the State was barred by the 3-year statute of limitations, which began to run on December 6, 1977, the date Ms. Hibbard's parents were murdered and she was allegedly raped.

DORE, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, and JOHNSON, JJ., concur.