IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

AYANNA BROWN, individually and as )
Personal Representative of the Estate )
of ALAJAWAN S. BROWN, and )
LOUIS BROWN, individually, )
)
Appellants, )
)
v. )
)
STATE OF WASHINGTON, )
DEPARTMENT OF CORRECTIONS, )
)
Respondent. )
_____)

No. 73206-4-I

UNPUBLISHED OPINION

FILED: December 27, 2016

SCHINDLER, J. — Twelve-year-old Alajawan S. Brown was shot in the back and died on April 29, 2010. On June 17, 2010, the State filed criminal charges of murder in the first degree of Alajawan and unlawful possession of a firearm against Curtis John Walker. Walker pleaded not guilty. Walker asserted he did not shoot Alajawan. Following a three-week trial beginning in January 2012, the jury convicted Walker of murder in the first degree of Alajawan and unlawful possession of a firearm in February 2012.[1] On November 24, 2014, Ayanna Brown and Louis Brown filed a wrongful death action against the State of Washington Department of Corrections (DOC) alleging DOC negligently supervised Walker. DOC asserted the lawsuit was barred by the three-year

_____
[1] State v. Walker, 180 Wn. App. 1013, 2014 WL 1286334, at *4-*5.

statute of limitations. The Browns filed a motion for partial summary judgment on the statute of limitations affirmative defense. DOC filed a cross motion for summary judgment dismissal of the lawsuit. The court granted DOC's motion for summary judgment and dismissed the lawsuit. Because the cause of action against DOC did not accrue until the jury convicted Walker of the murder of Alajawan in February 2012, we reverse summary judgment dismissal of the wrongful death action against DOC. We remand to enter an order dismissing the affirmative defense of statute of limitations and for trial.

April 29, 2010 Shooting

The material facts are not in dispute. Curtis John Walker, Jonathan Jackson, and Rodriquez Rabun were gang members of the Bloods. On April 29, 2010, Jackson, Rabun, and Walker drove to the Cedar Village Apartments in Skyway. Walker's spouse Shaleese Walker followed in a separate car. Jackson, Rabun, and Walker wore red hats. Jackson carried a chrome .22 caliber handgun. Rabun had a black 9 mm semiautomatic handgun.

Approximately 25 to 30 rival gang members of the Crips were outside the apartment complex. The Crips wear blue and black. Jackson argued with Crips gang member Earl Barrington. Barrington shot Jackson. Several other people fired shots, including Rabun. Walker got in the car with Shaleese and drove away. Rabun followed in Walker's car.

A 7-Eleven is located approximately 200 yards from the Cedar Village Apartments at the intersection of Martin Luther King Jr. Way and South 129th Street. Twelve-year-old Alajawan Brown was on the sidewalk near the 7-Eleven. Alajawan was

wearing a blue T-shirt and a blue and black jacket. He was shot in the back and killed. Witnesses reported a black male carrying a silver revolver handgun shot Alajawan.

June 17, 2010 Criminal Charges

On June 17, 2010, the State filed an information charging Walker with murder in the first degree of Alajawan and unlawful possession of a firearm. In the "Request for Bail," the State asks the court to set bail at $5 million. The request states Walker has a "lengthy and violent" criminal history, was on probation under a drug offender sentencing alternative (DOSA) on April 29, 2010, and "is currently in Department of Corrections custody for violating the terms of his DOSA."

Alajawan's parents Ayanna and Louis Brown attended the July 1, 2010 arraignment. At the beginning of the arraignment hearing, Walker's attorney requested the court not allow the media to film Walker because the identity of the shooter was in dispute.

> There are several eyewitnesses, from what I can tell from the [certificate of probable cause], and they give varying accounts, and some — some that may turn out to be inconsistent. The media's already shown his face and described him somewhat. But considering that he does have the right to the presumption of innocence, that this may come down to other suspects or identity, I would ask that the — the media not film him, to protect his right to a fair trial, . . . to cross-examine any witnesses that have already come forward or that may still come forward. I think it's appropriate, given the circumstances of this case.

The court denied the defense request because "pictures of [Walker] have already been in the media.

The defense acknowledged receipt, waived formal reading of the information, and entered a plea of not guilty. Defense counsel did not address the amount of bail or release.

3

The three-week jury trial began in January 2012. Ayanna and Louis Brown attended the trial every day. Walker asserted he did not shoot Alajawan.

The State presented evidence about the gang-related shooting at the Cedar Village Apartments and the shooting of Alajawan near the 7-Eleven. Rabun testified that after he pulled up behind Shaleese at the stoplight near the 7-Eleven, Walker got out of the car and fired at Alajawan with a chrome-colored revolver. The DNA[2] found on the trigger of the gun that shot Alajawan matched the DNA profile of Walker. Walker and Shaleese testified that Rabun shot Alajawan.

In closing, the State argued Walker shot Alajawan because he thought Alajawan " 'was the person who shot [Jackson] or he was a Crips.' "[3] In February 2012, the jury found Walker guilty of murder in the first degree of Alajawan.

The Browns attended the March 22, 2012 sentencing. Ayanna Brown spoke at the sentencing hearing. Ayanna said that after listening to the testimony at trial, including the testimony of Walker and his spouse, she believe Walker's refusal to admit he shot Alajawan showed he had no conscience.

> [A]fter listening to you, I learned you are worse than Judas. Do you know who he is? He is the one who betrayed Jesus for 30 pieces of silver. His greed had Jesus killed; but do you know the difference between you and him? Do you [know] what makes him better than you? He had a conscious. He knew what he had done, and he was man enough to admit that the blood of an innocent man was on his hands. As a matter of fact, he even tried to fix it. He had a conscience. You, sir, don't. . . . You shot a 12 year old, unarmed, innocent boy in the back.

The State recommended the court sentence Walker at the high end of the standard sentencing range—548 months plus the mandatory 60-month firearm

---

[2] Deoxyribonucleic acid.
[3] Walker, 2014 WL 1286334, at *5 (alteration in original).

enhancement.

> The reason for the State's recommendation of the high end is separate and apart from the heart-breaking equities of the fact that there was a 12 year old boy that was killed for no reason. Mr. Walker has a violent history. He has eight convictions for assault, including felony assault, and two domestic violence assaults.
>
> Because of his violent history, he has topped out on his offender score, so the gun charge is basically free crime when you count the offender score. So, I want you to take that into account.
>
> He is also a rapid recidivist. He was on DOSA at the time that this happened. He squandered the chance to do whatever he thought was the result of his drug use, and in fact was selling drugs when this happened, and carrying two guns in spite of being on probation.

The court sentenced Walker to 608 months in prison.

Wrongful Death Lawsuit

On September 3, 2014, the Browns filed a wrongful death tort claim against the State. The claim states a jury convicted Walker of murder in the first degree of Alajawan. The claim asserts DOC negligently supervised Walker, resulting in "the cold-blooded murder" of 12-year-old Alajawan.

On November 24, 2014, Ayanna Brown individually and as the personal representative of the Estate of Alajawan Brown and Louis Brown individually (collectively, the Browns) filed a wrongful death lawsuit against DOC. The Browns asserted DOC knew Walker was "a violent offender with a known history of drug use and gang involvement." The Browns alleged DOC negligently failed to supervise Walker and arrest him on April 17, 2010. The lawsuit alleged, "Had Defendant DOC done its job properly, or even with slight care, Curtis Walker would have been in jail or prison on April 29, 2010, and would have been unable to shoot and kill Alajawan

Brown." The lawsuit alleged, in pertinent part:

> . . . . DOC was negligent and grossly negligent when it failed to arrest Walker on or before April 17, 2010 (and thereafter), and when Defendant DOC failed to take any steps whatsoever following the complaint by a concerned citizen that Walker was in possession of drugs and guns and was engaging in acts of violence—all in violation of the terms of his supervision.
> . . . . DOC also failed to search the offender and his residence for drugs, guns, and other weapons, and failed to communicate with the other law enforcement agencies that had contacted Walker during his supervision.

The Browns also alleged they first learned that "Walker had been on probation at the time of their son's murder" and "had been violating his probation by selling drugs and possessing firearms prior to Alajawan Brown's murder" at the sentencing hearing on March 22, 2012.

In answer to the complaint, DOC admitted it is responsible for supervising adult offenders in the community; Walker was under DOC supervision; and he was classified as "HV, the highest risk level."

> Walker was a Drug Offender Sentencing Alternative (DOSA) Community Placement offender who was under DOC supervision and classified as HV, the highest risk level in the DOC classification system in 2010. . . . At that time, High Violent offenders like Walker required . . . monthly contacts by the Community Corrections Officer.

DOC admitted it received a complaint on April 17, 2010, a few days before Walker shot Alajawan, that "Walker may have physically assaulted his girlfriend and may have threatened her with a firearm. It was also reported that Walker was selling drugs out of his house."

DOC asserted a number of affirmative defenses including that the lawsuit filed on November 24, 2014 was barred by the statute of limitations.

Cross Motions for Summary Judgment on Statute of Limitations

The Browns filed a motion for partial summary judgment dismissal of the statute of limitations affirmative defense. The Browns argued the three-year statute of limitations is "tolled until a plaintiff has - or should have - discovered the facts supporting the elements for a cause of action, when an injury or its true cause is not immediately apparent." The Browns argued the negligent supervision claim against DOC did not accrue until the sentencing hearing on March 22, 2012 when they first learned Walker was on probation when he shot Alajawan on April 29, 2010. The Browns also argued the "November 2014 filing date undoubtedly falls within the three-year statute of limitations for negligence claims, regardless of which point in Curtis Walker's trial is ultimately deemed the proper accrual date."

Ayanna and Louis filed declarations in support of the motion for partial summary judgment. Ayanna states:

> In the weeks and months after the shooting, we closely followed the investigation and were eager to learn the identity of our son's killer. We were also very interested in learning the killer's motivations, and in making sure that everyone who was in any way responsible for our son's death was held accountable.

The Browns state they learned Walker "was eventually arrested and charged with killing our son. His accomplices were also arrested." Prior to trial, the Browns knew only that Walker was "a gang member, a 'blood,' and that he may have shot Alajawan because he was wearing blue." They were "given only limited information about Mr. Walker and his history" and "did not learn that Curtis Walker had been on probation or DOC supervision (or that he had been violating the terms and conditions of his probation prior to our son's murder)."

7

Louis Brown states the detectives did not provide any information that Walker was on probation at the time of the murder. Louis states, "[M]y wife and I made sure to attend the trial every day." And at the sentencing hearing on March 22, 2012, they "learned for the first time that Mr. Walker had been on probation at the time of our son's murder" and "had been violating his probation by selling drugs and possessing firearms."

DOC filed a cross motion for summary judgment dismissal of the wrongful death lawsuit as barred by the three-year statute of limitations. DOC argued the Browns did not exercise due diligence to discover the factual basis for the negligent supervision claim. DOC asserted the Browns "knew the identity of the shooter" and knew or should have known Walker was under DOC supervision when the charges were filed on June 17, 2010.

In support, DOC submitted copies of media coverage and a copy of the charging documents. A June 17, 2010 Seattle Times article posted on the Internet describes Walker's criminal history and notes that since May 14, 2010, he "has been in custody. . . on a probation violation."

> Walker has previous convictions for assault, drug possession, malicious mischief, reckless endangerment, harassment, obstruction, trespassing and violation of a protection order, according to prosecutors. . . . He has been in custody since May 14 on a probation violation.

A June 17, 2010 KIRO TV website news report mentions Walker "was arrested in May for a probation violation in an unrelated case and is being held at the state Corrections Center in Shelton." And a June 17, 2010 news report posted on the KOMO

TV website states Walker "has a lengthy criminal history, . . . including several convictions for assault, drugs, and firearms violations."[4]

The court granted summary judgment in favor of the State.

> This Court finds in this case that the discovery rule does apply. And this Court finds that the Browns knew or should have known as early as June of 2010 that Mr. Walker was on probation, and that at that time they had reason to believe that there was a duty, a potential breach of that duty, certainly damages, and certainly causation.

The court entered an order granting the DOC summary judgment motion, denying the Browns' motion for partial summary judgment, and dismissing the wrongful death lawsuit with prejudice. The Browns appeal.[5]

Accrual of Cause of Action for Negligent Supervision

The Browns contend the court erred in dismissing the wrongful death lawsuit against DOC. The Browns assert the claim against DOC for negligent supervision did not accrue until the sentencing hearing in March 2012. DOC claims the cause of action accrued no later than June 17, 2010. DOC asserts the trial court correctly ruled the discovery rule applied and barred the lawsuit.

We review summary judgment de novo, engaging in the same inquiry as the trial court. Neigh. All. of Spokane County v. Spokane County, 172 Wn.2d 702, 715, 261 P.3d 119 (2011). Summary judgment is appropriate if the record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter

---

[4] DOC submitted other media reports after June 17, 2010 that mention Walker's criminal history and media reports after the jury conviction in February 2012.

[5] Below, DOC argued the discovery rule did not apply. DOC filed a cross appeal of "that portion of the Court's order on summary judgment dated February 20, 2015, which held that the discovery rule applied." But DOC does not assign error on this ground and addresses the argument in a footnote. RAP 10.3(b); see also Herzog Aluminum, Inc. v. Gen. Am. Window Corp., 39 Wn. App. 188, 197, 692 P.2d 867 (1984) (issue not properly before appellate court where respondent does not assign error to trial court decision). We do not address an argument in a footnote. Norcon Builders, LLC v. GMP Homes VG, LLC, 161 Wn. App. 474, 497, 254 P.3d 835 (2011).

of law. CR 56(c). Where reasonable minds could reach but one conclusion from the admissible facts in evidence, summary judgment should be granted. Allen v. State, 118 Wn.2d 753, 760, 826 P.2d 200 (1992); LaMon v. Butler, 112 Wn.2d 193, 199, 770 P.2d 1027 (1989).

Under RCW 4.20.010, "[w]hen the death of a person is caused by the wrongful act, neglect, or default of another his or her personal representative may maintain an action for damages against the person causing the death." Wrongful death actions are governed by the three-year statute of limitations. RCW 4.16.005, .080(2).

As a general rule, a tort "cause of action accrues at the time the act or omission occurs." In re Estates of Hibbard, 118 Wn.2d 737, 744, 826 P.2d 690 (1992). The discovery rule is an exception to the general rule. Hibbard, 118 Wn.2d at 744-45. Application of the discovery rule extends to "claims in which plaintiffs could not immediately know of the cause of their injuries." Hibbard, 118 Wn.2d at 750.

> In certain torts, . . . injured parties do not, or cannot, know they have been injured; in these cases, a cause of action accrues at the time the plaintiff knew or should have known all of the essential elements of the cause of action.

White v. Johns-Manville Corp., 103 Wn.2d 344, 348, 693 P.2d 687 (1985); see also Deggs v. Asbestos Corp., ___ Wn.2d ___, 381 P.3d 32, 37-38 (2016).

Under the discovery rule, a cause of action accrues when the plaintiff "knew or should have known the essential elements of the cause of action." Allen, 118 Wn.2d at 757-58. In the summary judgment context, we determine whether the undisputed facts establish the time of accrual. Allen, 118 Wn.2d at 758. We may decide the applicability of the discovery rule as a matter of law where the facts are subject to only one reasonable interpretation. Allen, 118 Wn.2d at 760.

10

The essential elements of a cause of action for negligence are (1) the existence of a duty owed to the plaintiff, (2) breach of that duty, (3) resulting injury, and (4) a proximate cause between the alleged breach and resulting injury. Hertog v. City of Seattle, 138 Wn.2d 265, 275, 979 P.2d 400 (1999); Pedroza v. Bryant, 101 Wn.2d 226, 228, 677 P.2d 166 (1984).

The threshold determination of whether a duty exists is a question of law. Pedroza, 101 Wn.2d at 228. In Taggart v. State, 118 Wn.2d 195, 219, 822 P.2d 243 (1992), the court held the State has a duty to take reasonable precautions to protect against reasonably foreseeable dangers posed by parolees.

> "One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm."

Taggart, 118 Wn.2d at 219 (quoting RESTATEMENT (SECOND) OF TORTS § 319 (1965)). The court concluded that "parole officers have a duty to protect others from reasonably foreseeable dangers engendered by parolees' dangerous propensities." Taggart, 118 Wn.2d at 224; see also Binschus v. State of Wash., Dep't of Corr., 186 Wn.2d 573, 580, 380 P.3d 468 (2016)[6] ("[T]he take charge duty described in Restatement § 319" is "a duty to control.").

In Joyce v. Department of Corrections, 155 Wn.2d 306, 316, 119 P.3d 825 (2005), the court held community corrections officers have the same duty with regard to the offenders they supervise. The court held DOC "assume[s] the duty of supervising an offender's conduct" and "has the ability to take steps to ensure, as a condition of

---

[6] Emphasis in original.

release, that the offender complies with the conditions of release." Joyce, 155 Wn.2d at 316.

Here, the undisputed facts show that the Browns did not know or could not reasonably have known the essential elements of the negligent supervision claim against DOC until February 2012. Below and on appeal, DOC asserts the Browns "knew the identity of the shooter less than two months after Alajawan's death" on June 17, 2010, and the Browns "knew from media accounts" that Walker had an extensive criminal record and was under DOC supervision.

Contrary to the assertion of DOC, the identity of the person who shot Alajawan was not established until the jury convicted Walker in February 2012. Walker was charged with the murder of Alajawan on June 17, 2010. The charging documents as well as the media news reports described his lengthy criminal history and that he was under DOC supervision. But Walker pleaded not guilty and asserted he did not commit the murder of Alajawan. The trial began in January 2012. Walker asserted he did not murder Alajawan. Walker and his spouse testified that Rabun committed the murder of Alajawan. The jury convicted Walker of murder in the first degree of Alajawan and illegal possession of a firearm in February 2012.

We conclude the undisputed record establishes the cause of action against DOC for negligent supervision did not accrue and the three-year statute of limitations did not begin until Walker was convicted in February 2012. Only then did the Browns know the identity of the shooter and the essential elements of the tort claim including that DOC's negligent supervision of Walker was a proximate cause of Alajawan's death.

Allen supports our conclusion. In Allen, a gunman shot and killed Beverly Allen's spouse and two other people on December 18, 1979. Allen, 118 Wn.2d at 754-55. The police told Beverly they did not know who fired the shots. Allen, 118 Wn.2d at 755. In May 1982, a jury found John Frederick Anderson and Robert Stratton guilty of the murders. Allen, 118 Wn.2d at 755. At the time of the murders, Anderson and Stratton were on parole. Allen, 118 Wn.2d at 755.

Beverly maintained minimal contact with the police, and family members postponed showing her newspaper articles about the trial. Beverly did not learn about the conviction of Anderson and Stratton until September 1985. Allen, 118 Wn.2d at 755-57. On October 9, 1985, Beverly filed a wrongful death action against the State alleging negligent supervision. Allen, 118 Wn.2d at 757.

Because through the exercise of due diligence Beverly should have discovered the essential elements of her cause of action; specifically, that Anderson and Stratton were convicted in May 1982, the court affirmed dismissal of the lawsuit as barred by the statute of limitations. Allen, 118 Wn.2d at 758-60.

Here, unlike in Allen, there is no dispute the Browns timely filed the wrongful death action against DOC well within the three-year statute of limitations, two years after the jury convicted Walker of murder in the first degree of Alajawan in February 2012.

We reverse summary judgment dismissal of the wrongful death lawsuit against DOC as barred by the statute of limitations. We remand for entry of an order granting

the Browns' motion for partial summary judgment on the affirmative defense of statute of limitations and for trial.[7]

Leach, J

WE CONCUR:

Trickey, ACJ

Spearman, J.

---

[7] See Certain Underwriters at Lloyd's, London v. Travelers Prop. Cas. Co. of Am., 161 Wn. App. 265, 286, 256 P.3d 368 (2011); Rahman v. State, 150 Wn. App. 345, 359, 208 P.3d 566 (2009); Lutheran Day Care v. Snohomish County, 119 Wn.2d 91, 128, 829 P.2d 746 (1992).