

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

JUSTIN JENKINS,                          )          No. 40580-0-III
                                         )
                    Appellant,           )
                                         )
        v.                               )
                                         )          UNPUBLISHED OPINION
DEPARTMENT OF SOCIAL AND                 )
HEALTH SERVICES,                         )
                                         )
                    Respondent.          )

MURPHY, J. — Justin Jenkins (Jenkins), pro se, appeals from the trial court's order

granting summary judgment to the Department of Social and Health Services (DSHS).

Jenkins, a grandchild to Helen Tucker (Tucker), sued DSHS on November 22, 2022,

alleging (1) injury resulting from failure of a health care provider to follow the accepted

standard of care, (2) fraudulent paperwork with forged signatures and blank consent

forms processed through DSHS, (3) health care not consented to, and (4) lack of consent

by the power of attorney. These claims are related to Tucker's enrollment in the

Community Options Program Entry System (COPES) program, a Medicaid waiver

program administered by DSHS for in-home long-term care services.

Tucker died on October 14, 2008. Jenkins was appointed as the personal representative of the estate in 2009 and started investigating COPES and his grandmother's involvement in that program through DSHS records requests. That same year, he was served with a creditor's claim from DSHS related to medical expenses and services paid via the COPES program then owed by the estate. A lien was placed on real property in 2009 in relation to the creditor's claim. Between 2009 and 2011, Jenkins communicated with DSHS about the basis for the creditor's claim. He received information about his grandmother's enrollment in COPES, the status of the person DSHS paid to provide in-home care services, payments made, and Tucker's transfer from her home to a rehabilitation facility.

In 2014, a letter from the office of the Attorney General of Washington (AGO) reiterated the details of the basis for DSHS's creditor's claim. In 2018, Jenkins petitioned to reopen the probate estate explicitly stating the basis to reopen as his plan to allege DSHS committed fraud and wrongfully issued a lien. On June 4, 2019, the AGO sent Jenkins a letter stating its intent to withdraw the creditor's claim with the lien dismissed that same day. Jenkins filed suit on November 22, 2022.

Because Jenkins's claims are barred by the applicable statutes of limitations, we affirm.

2

FACTS

The facts are reviewed in the light most favorable to Jenkins as the nonmoving party. Tucker enrolled in the DSHS-administered COPES program in July 2007. She selected her son, Artis Jenkins (Artis), as her in-home care provider. In March 2008, DSHS's Adult Protective Services (APS) received an anonymous report expressing concern about Tucker's living conditions. The initial investigation was inconclusive. However, after APS received a second report and investigated, a finding was made that Tucker's living conditions constituted self-neglect. With this finding, a guardian ad litem was appointed. Tucker was subsequently moved into a rehabilitation facility in August 2008. Tucker died at the rehabilitation facility on October 14, 2008. In 2009, Jenkins was appointed as the personal representative of Tucker's estate.

Jenkins is a grandson of Tucker and the son of Artis. Jenkins learned Tucker was moved to a rehabilitation facility in the course of a 2008 guardianship proceeding when he was summoned to court. On February 13, 2009, Jenkins, as personal representative of his grandmother's estate, was served with a notice of a creditor's claim from DSHS to recover COPES monies paid for health care expenses and services, including money paid to Artis for the in-home care Artis was supposed to have provided to Tucker. Jenkins was informed of a $14,730.45 statutory lien, recorded on March 20, 2009, on Tucker's home

3

relative to her COPES enrollment. In accordance with Tucker's will, the deed to that property was conveyed to Jenkins on April 20, 2009.

Beginning in 2009 and continuing into 2011, Jenkins investigated Tucker's involvement in the COPES program through record requests made to DSHS. In 2012, the probate case for Tucker was closed for the first time.

On April 8, 2014, the AGO sent a letter to Jenkins, pursuant to his request, detailing the benefits paid on behalf of Tucker and communications that occurred relative to her COPES enrollment. The letter explained that Tucker received pharmacy and medical supplies, as well as in-home care services through provider Artis who received payments for providing care. The letter informed Jenkins that DSHS sought to recover $14,740.45 from Tucker's estate for payments made during her lifetime for medical and long-term care services. Jenkins does not dispute receipt of this letter.

In May 2018, Jenkins moved to reopen the probate. The purpose of reopening the probate was to contest the creditor's claim filed by DSHS. Jenkins's position was that DSHS failed to obtain the necessary approval for any alleged services, and the claimed receipt of services provided to Tucker were disputed.

On June 4, 2019, the AGO sent Jenkins a letter stating its intent to withdraw its creditor's claim and that the lien would be dismissed with prejudice that day. It was stated that the AGO acknowledged Artis may not have provided the COPES services that

were paid by DSHS. With inconclusive evidence that Artis provided services, DSHS believed further litigation on the claim was not cost effective. The probate was closed on September 13, 2019.

Jenkins petitioned to reopen the probate estate, again, on May 31, 2022. The stated basis to reopen was described as wanting to file a claim of damages against DSHS. Jenkins detailed that his claims would include actions for injuries resulting from health care, fraud, medical liability or malpractice, and kidnapping as Tucker was removed from her home to a rehabilitation facility.

On November 22, 2022, Jenkins filed a lawsuit against DSHS. Jenkins listed himself individually, not as personal representative, as the plaintiff in the caption of his complaint. Jenkins claimed DSHS fraudulently enrolled Tucker in COPES, DSHS was negligent in allowing Artis to act as her caretaker, and Tucker was unlawfully taken to the rehabilitation center where she later died. Jenkins listed causes of action to include: (1) "injury resulting from failure of the health care provider[s] to follow the accepted standard of care," (2) fraudulent paperwork with forged signatures and "blank forms processed by and through DSHS," (3) "[h]ealth care to which the patient [or her] representative did not consent," and (4) "[l]ack of consent and power of attorney," both medical and durable. Clerk's Papers (CP) at 5. Jenkins sought relief in the form of damages not to exceed $25,000,000.

On February 09, 2023, Jenkins filed a document entitled "Addendum/Amendment of Original Complaint." CP at 117. The addendum was "to add clarification and better understanding for [DSHS]." CP at 117. Jenkins purported that he sued DSHS as the personal representative of Tucker's estate. In this document, the listed cause of action was "Medical Liability Malpractice/False Statements." CP at 127. DSHS objected to the filing of this document as Jenkins neither sought agreement from DSHS nor leave from the court to amend his complaint.

The probate estate closed on February 24, 2023.

On April 18, 2024, DSHS moved for summary judgment dismissal of Jenkins's claims. DSHS argued that (1) Jenkins lacked standing to bring a claim against DSHS as there was no cause of action that would permit Jenkins to bring a lawsuit on his own behalf, and (2) the statute of limitations barred the claim.

On May 9, 2024, Jenkins filed a "Request for Summary Judgment" with multiple unauthenticated documents appended. CP at 15-99 (some capitalization omitted). No notice of a hearing date accompanied this motion.

On June 4, 2024, Jenkins filed documents entitled: "Affidavit of Bruce Jenkins," "Declaration of Shawn Jenkins in Support of Defendant's Motion for Summary Judgment," and "Plaintiff Reply to Defendants Claims for Failure to Respond to Motion for Summary Judgment." CP at 100-05 (some capitalization omitted). On June 6, 2024,

No. 40580-0-III
*Jenkins v. Dep't of Soc. & Health Servs.*

Jenkins filed a document entitled "Declaration of David Jenkins in Support of Plaintiff's Motion for Summary Judgment." CP at 106-08 (some capitalization omitted).

On June 7, 2024, the trial court held a hearing on DSHS's motion for summary judgment. Prior to hearing argument, the trial court noted that it appeared there was no response filed by Jenkins, but the court discovered Jenkins filed documents with the clerk's office that same morning. The trial court did not review the documents filed that morning due to a technical issue with LINX.[1]

During argument, the trial court asked Jenkins why he waited until November 22, 2022, to file a lawsuit. Jenkins responded:

> All of my research was focused on releasing the lien. In doing so, I discovered that an act of omission was done by DSHS by agreeing that Mr. Artis[] Jenkins did not provide a service. It states that "DSHS is releasing the lien because we have evidence that Artis[] Jenkins may not have provided a service." That right there is an act of omission, which is three years from the act as well, if I'm not mistaken, I cannot find it, but it's also eight years from the act of—I'm sorry, I don't have this directly in front of me here, a lot of paperwork here. But it basically states that I am able to bring suit because they admitted what they have done.
> So this is what brings me to court. Why did I not do this in the very beginning? I am not an attorney, so it does take me a long . . . time to sift through this information and understand this information and seek help from other attorneys and/or doing disclosure of evidence. But for me requesting all the documentation from DSHS, it has clearly showed that they have no standing. I have standing because I am the grandson, I am the personal representative, I was the power of attorney and none of this was ran through me. I was not contacted in any way whatsoever.

[1] Pierce County Legal Information Network Exchange.

7

No. 40580-0-III
*Jenkins v. Dep't of Soc. & Health Servs.*

Rep. of Proc. (RP) (June 7, 2024) at 14.

After hearing from counsel for DSHS and Jenkins, the trial court concluded that even with the most "generous" view of the facts, the "statute ran in June of 2019, at the latest, and we are still three years beyond that with your filing in November of 2022." RP (June 7, 2024) at 16.

The trial court granted DSHS's motion. In its written order, the trial court noted it considered: (1) defendant's motion for summary judgment, (2) declaration of Aaron Rothstein in support of motion to continue, and (3) plaintiff's reply and exhibits/declarations, if any, in addition to arguments. The trial court dismissed Jenkins's complaint with prejudice.

Jenkins appeals. A Division Three panel considered this appeal without oral argument after receiving an administrative transfer of the case from Division Two.

ANALYSIS

"A grant of summary judgment is reviewed de novo, with the reviewing court engaging in the same inquiry as the trial court." *McGowan v. State*, 148 Wn.2d 278, 289, 60 P.3d 67 (2002). Summary judgment is appropriate if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. CR 56(c).

8

We view all evidence and reasonable inferences in the light most favorable to the nonmoving party. *Volk v. DeMeerleer*, 187 Wn.2d 241, 254, 386 P.3d 254 (2016).

Jenkins's claims sound in negligence, fraud, and medical malpractice under chapter 7.70 RCW (actions for injuries resulting from health care). The applicable statutes of limitations are RCW 4.16.080(2) (three years for injury to person or rights not otherwise enumerated) and RCW 4.16.080(4) (three years for fraud, running from discovery), as well as RCW 4.16.350 for health care injuries (three years from the act or omission, or one year from discovery, whichever is later, but no claim may be commenced more than eight years from the act or omission).

Jenkins argues that the statute of limitations had not expired when he filed his lawsuit because "fraud may toll the applicable timeframe." Amend. Br. of Appellant at 15. DSHS responded that the trial court correctly granted summary judgment as the statute of limitations had expired. We agree with DSHS.

Washington applies the discovery rule when an injured party does not or cannot know they have been injured. *In re Ests. of Hibbard*, 118 Wn.2d 737, 744, 826 P.2d 690 (1992). In such cases, the "'cause of action accrues at the time the plaintiff knew or should have known all of the essential elements of the cause of action.'" *Id.* at 744-45 (quoting *White v. Johns-Manville Corp.*, 103 Wn.2d 344, 348, 693 P.2d 687 (1985)).

9

For medical malpractice, RCW 4.16.350 codifies a one-year discovery period, subject to an eight-year repose.

Even viewing the facts most favorably to Jenkins, he discovered or reasonably should have discovered the basis for his claims well before November 2019, three years prior to filing. Tucker died in 2008. By 2009, Jenkins was investigating COPES through DSHS record requests and was served with the creditor's claim as well as the lien on the real property in 2009. Between 2009 and 2011, Jenkins communicated with DSHS about the basis for the creditor's claim as to medical expenses and rendered services. He reviewed records and he determined in the 2009 to 2011 timeframe Artis's role was that of a DSHS paid caregiver. This knowledge encompassed the core allegations Jenkins asserted in 2022: Tucker's COPES enrollment, Artis's caregiver status, payments made, and Tucker's move from her home to a rehabilitation facility. In 2014, the letter from the AGO reiterated all of these details. Jenkins's 2018 reopening of the probate explicitly alleged DSHS committed fraud and wrongfully filed a lien. The claims made in the 2018 petition to reopen the probate estate mirror the claims asserted by Jenkins in his 2022 lawsuit.

Jenkins contends that the June 2019 withdrawal of lien by DSHS constituted new "discovery" of DSHS's omission because DSHS admitted in dismissing the lien that "there is evidence that [Artis] might not have provided the COPES services that he

charged to DSHS," CP at 83, and this therefore tolled or restarted the statute of limitations periods. We disagree. The withdrawal of the lien did not reveal new facts about the events that occurred in 2007 and 2008. Rather, the withdraw of the lien resolved the creditor's claim in Jenkins's favor. Jenkins already knew the underlying facts (enrollment, caregiver approval, payments, and removal) by 2011, and certainly by 2014 (AGO letter), and again in 2018 (Jenkin's petition to reopen the probate). Regardless, Jenkins still did not initiate an action within three years of June 2019 (withdrawal of creditor's claim and release of lien). His lawsuit was not filed until November 2022. This is more than three years after the date Jenkins claims there was a change in his knowledge about his claim against DSHS.

The discovery rule requires diligence. A plaintiff cannot wait indefinitely after possessing facts that would prompt a reasonable inquiry. *Clare v. Saberhagen Holdings, Inc.*, 129 Wn. App. 599, 602, 123 P.3d 465 (2005). Here, Jenkins had ample opportunity to inquire and sue DSHS within three years of his 2011 realizations or even his 2018 allegations as articulated in his petition to reopen the probate.

For the medical malpractice claims, the eight-year repose under RCW 4.16.350 bars any action taken after 2016 (eight years from the 2008 events). Even applying the one-year discovery rule, Jenkins's knowledge by 2011 triggered the expiration of that period in 2012.

No. 40580-0-III
*Jenkins v. Dep't of Soc. & Health Servs.*

Because the statutes of limitation are dispositive, we need not address standing or other issues.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Murphy, J.

WE CONCUR:

_____
Cooney, J.

_____
Fearing, J.P.T.[†]

---

[†] George B. Fearing, a retired judge of the Washington State Court of Appeals, is serving as a judge pro tempore of this court pursuant to RCW 2.06.150(1).

12