[No. 15883-3-II. Division Two. August 8, 1994.]

DONALD F. SAMUELSON, *Appellant*, v. COMMUNITY COLLEGE DISTRICT No. 2, ET AL, *Respondents*.

*Eric R. Hansen,* for appellant.

*Christine O. Gregoire, Attorney General, W. Howard Fischer, Senior Counsel,* for respondents Community College District No. 2 (Grays Harbor College); the Board of Trustees of Community College District No. 2; Dr. William Becker; and Christine Bunnell.

*Christine O. Gregoire, Attorney General, Paul J. Triesch* and *Stewart A. Estes, Assistants,* for respondent State Board for Community College Education, and Earl Hale.

[As amended by order of the Court of Appeals September 7, 1994.]

ALEXANDER, J. — Donald F. Samuelson appeals a summary judgment in favor of Community College District 2, the district's board of trustees, several Grays Harbor College administrators, the Washington State Board for Community College Education, and its executive director. In granting summary judgment, the trial court concluded that Samuelson's claims are barred by the statute of limitations. We affirm the summary judgment in favor of the State Board for Community College Education and its executive director. We reverse the summary judgment in favor of Community College District 2, its trustees, and the named administrators of Grays Harbor College.

Donald Samuelson has been a full-time instructor at Grays Harbor College since March 1978. Before obtaining employment with Grays Harbor College, Samuelson was

employed at the University of Washington, where he was a member of the Public Employees' Retirement System (PERS).

When Samuelson was hired by Grays Harbor College, he was eligible to participate in a retirement annuity purchase plan called the Teachers' Insurance Annuity Association and College Retirement Equities Fund (TIAA/CREF). Eligibility for that program was established by an administrative rule promulgated by the State Board for Community College Education. *See* WAC 131-16.

As a new employee of Grays Harbor College, Samuelson was required by administrative rule, former WAC 131-16--030, to participate in TIAA/CREF, unless he elected to remain a member of PERS.[1] Grays Harbor College did not, however, enroll Samuelson in TIAA/CREF. Neither did it inform Samuelson that he was eligible to participate in the program, nor give him any information about his eligibility for TIAA/CREF. Although Samuelson conceded that he received a packet of materials regarding his benefits, information about TIAA/CREF was not included in that packet. Samuelson claims that he could not readily obtain information regarding TIAA/CREF, and, because he was not told otherwise, assumed that it was necessary to remain a member of PERS. Although Samuelson remained a PERS member, he claims now that he would have chosen to enroll in TIAA/CREF if he had been informed of his option to do so.

In the spring of 1989, two employees of Grays Harbor College informed Samuelson that a mistake had been made when he was hired, in that he should have been informed of his eligibility for TIAA/CREF. According to Samuelson, this was the first time he became aware of his eligibility for

---

[1] At the time Samuelson obtained employment at Grays Harbor College, former WAC 131-16-030 provided:

"**Optional participation for certain employees.** After January 1, 1970, participation in the TIAA/CREF Plan shall be required of all eligible new employees except for such new employees who at the time of employment are members of the Washington state teachers' retirement system (WSTRS) or the Washington public employees' retirement system (WPERS) and who elect to retain such membership. . . ."

participation in TIAA/CREF. Samuelson enrolled in TIAA/CREF in September 1989.

According to an estimate by a TIAA/CREF benefit counselor, Samuelson's interest in TIAA/CREF could have been as high as $99,653.86 as of June 30, 1989, if he had participated in the plan from the date he was hired by Grays Harbor College. The parties agree that Samuelson accrued $46,039.42 in his PERS account during the course of his employment at Grays Harbor College, up to December 29, 1989.

On October 30, 1990, Samuelson commenced a lawsuit in Grays Harbor County Superior Court against Community College District 2; the district's board of trustees, Grays Harbor College's Vice President for Administration, Dr. William Becker, and its payroll manager, Christine Bunnell.[2] The lawsuit also named the State Board for Community College Education and its executive director, Earl Hale, as Defendants. Samuelson alleged in his complaint that Grays Harbor College, its trustees and the named administrators were liable to him under a theory of negligence and negligent misrepresentation for failing to inform him of his TIAA/CREF eligibility. He alleged, in addition, that the State Board for Community College Education and its executive director were negligent in failing to assist Samuelson in the purchase of TIAA/CREF annuities. Samuelson sought a service credit in TIAA/CREF, retroactive to his initial employment date, or, alternatively, money damages.

Samuelson and all of the Defendants moved for summary judgment on the issue of liability, the Defendants contending that the statute of limitations had expired on Samuelson's claim. The trial court granted summary judgment to all of the Defendants, concluding that Samuelson's action accrued on the date of his initial employment at Grays Harbor College, March 1978, and, that as a consequence, the 3-year

---

[2]For simplicity, we will refer to all of these Defendants (now Respondents) as "Grays Harbor College". In doing so, we note that one brief was filed on behalf of all of them in this court. In addition, no one has contended that we should consider the respective liability of each of these Defendants separately.

statute of limitations had expired. The liability issues were thus not addressed.

In reviewing a summary judgment, an appellate court engages in the same analysis as the trial court. The court considers the evidence in the light most favorable to the nonmoving party to determine whether genuine issues of material fact exist, and whether the moving party is entitled to judgment as a matter of law. *Yakima Cy. (W. Vly.) Fire Protec. Dist. 12 v. Yakima*, 122 Wn.2d 371, 381, 858 P.2d 245 (1993); *Bowles v. Department of Retirement Sys.*, 121 Wn.2d 52, 61, 847 P.2d 440 (1993); CR 56(c).

## I

### STATUTE OF LIMITATIONS

Samuelson contends that the trial court erred in determining that his claims were barred by the statute of limitations. The statute of limitations applicable to Samuelson's claim is 3 years. RCW 4.16.080(2). Samuelson concedes that more than 3 years have elapsed since he was hired by Grays Harbor College. He contends, however, that the statute of limitations should not bar his claim because he did not discover the basis for his claim until the spring of 1989, when he was first told of his eligibility for TIAA/CREF by employees of Grays Harbor College.

The general rule is that a cause of action accrues at the time the act or omission occurs. *In re Estates of Hibbard*, 118 Wn.2d 737, 744, 826 P.2d 690 (1992). In some cases, however, parties injured by the tort of another do not, or cannot, know they have been injured at the time the injury takes place. In such cases, the cause of action accrues at the time the plaintiff knew or in the exercise of diligence should have known all of the essential elements of the cause of action. This exception to the general rule is known as the "discovery rule". *Hibbard*, 118 Wn.2d at 744; *White v. Johns-Manville Corp.*, 103 Wn.2d 344, 348, 693 P.2d 687, 49 A.L.R.4th 955 (1985).

Although the discovery rule was first adopted in *Ruth v. Dight*, 75 Wn.2d 660, 453 P.2d 631 (1969), a medical malpractice case, courts have extended the rule to other tort cases. For

example, the rule has been applied to a suit for damages for the alleged negligent cancellation of an insurance policy, and to tort cases arising out of professional relationships between attorneys, accountants, and stockbrokers and their clients. *See Hibbard*, 118 Wn.2d at 745-46. The decision to extend the discovery rule to a cause of action is a matter of judicial policy. *Denny's Restaurants, Inc. v. Security Union Title Ins. Co.*, 71 Wn. App. 194, 216, 859 P.2d 619 (1993).

■■ We believe that the policies underlying the discovery rule are served by applying it in this case. In *U.S. Oil & Ref. Co. v. Department of Ecology*, 96 Wn.2d 85, 633 P.2d 1329 (1981), the court noted that statutes of limitations operate upon the premise that when an adult has a justiciable grievance, he usually knows it, and the law affords him ample opportunity to assert it in the courts. That premise is inapplicable, however, where the plaintiff must rely on the defendant's self-reporting, because the probability increases that the plaintiff will be unaware of any cause of action. *U.S. Oil*, 96 Wn.2d at 93. This case falls into that category because Samuelson apparently had no actual knowledge of his eligibility for TIAA/CREF. Indeed, he claims to have had no knowledge of his eligibility for TIAA/CREF until the employees of the college informed him of it. He was relying, as most employees do, on his employer to inform him of his eligibility for certain benefits.

■ Although we conclude that the discovery rule should have application to this case, we are unable to determine whether Samuelson's cause of action is barred by the statute of limitations. The discovery rule postpones the running of the statute of limitations only until the time that the plaintiff, through due diligence, *should have* discovered the basis for the cause of action. *Allen v. State*, 118 Wn.2d 753, 758, 826 P.2d 200 (1992). The point at which the plaintiff should have discovered the injury is a question for the trier of fact. *Koker v. Armstrong Cork, Inc.*, 60 Wn. App. 466, 475, 804 P.2d 659, *review denied*, 117 Wn.2d 1006 (1991); *Stark v. Celotex Corp.*, 58 Wn. App. 940, 943, 795 P.2d 1165, *review denied*, 115 Wn.2d 1020 (1990).

It is for the trier of fact to determine the point at which Samuelson, through due diligence, should have discovered his eligibility for TIAA/CREF. It may well be that the trier of fact will determine that Samuelson should have known of his eligibility for TIAA/CREF shortly after he obtained employment with Grays Harbor College. On the other hand, the factfinder may determine that Samuelson had no way of knowing of his eligibility until the employees of Grays Harbor College informed him that he was eligible for TIAA/CREF. There are insufficient facts in the record before us to allow such a determination to be made. The most that can be said is that this is a fact question and the appellate court is not the fact finder.

Grays Harbor College contends that Samuelson could have discovered that he was eligible for TIAA/CREF by reading published regulations. It buttresses its argument with the well-known rule that people are presumed to know the law. We decline to apply the presumption in this case.

In *Hutson v. Wenatchee Fed. Sav. & Loan Ass'n*, 22 Wn. App. 91, 100, 588 P.2d 1192, *review denied*, 92 Wn.2d 1002 (1979), the court was presented with this issue. In *Hutson*, the plaintiffs contended that the words and conduct of a savings and loan employee created an implied contract that the savings and loan would procure life insurance for them as borrowers. In an effort to show that the Hutsons' reliance on the words and conduct of the employee was unjustified, the savings and loan sought to invoke the protection of a state statute which required insurance applications to be in writing. In doing so it asserted the proposition that all people are presumed to know the law. *Hutson*, 22 Wn. App. at 97. The *Hutson* court rejected that argument, holding that it would be "excessively harsh and contrary to common sense to presume that people always know the law" and, further, that the presumption should not be used to supply a fact material to the controversy. *Hutson*, 22 Wn. App. at 100.

Similarly, in this case, the presumption should not operate to establish that Samuelson should have known of his eligibility for TIAA/CREF simply because he could have

learned of his eligibility by reading the Washington Administrative Code. This accords with common sense, given that it is common for employees to rely on their employers for information regarding their benefits. Moreover, former WAC 131-16-030 requires employees to "elect" between PERS and TIAA/CREF. As we note below, this election requirement, in part, acts to ensure that employees are informed of their options. If employees were presumed to know all of the benefits they are eligible to receive under administrative rules, there would be no need to require employees to make an election as the regulation requires.

## II

### Duty to Enroll Samuelson In Tiaa/cref

■ All of the Defendants contend that even if the statute of limitations has not run on Samuelson's claim, they have no liability because they owed Samuelson no duty. They assert that we can therefore affirm the trial court on that basis. Samuelson, on the other hand, contends that Grays Harbor College, the state board and its director had a duty to enroll him in TIAA/CREF, a duty it breached by failing to either enroll him in TIAA/CREF or to inform him of his eligibility. In order to prove actionable negligence, a plaintiff must establish four elements: (1) the existence of a duty owed to the complaining party; (2) a breach of that duty; (3) a resulting injury; and (4) proximate cause. *Hansen v. Friend*, 118 Wn.2d 476, 479, 824 P.2d 483 (1992); *Pedroza v. Bryant*, 101 Wn.2d 226, 228, 677 P.2d 166 (1984). The existence of a duty is a question of law for the court. *Hansen*, 118 Wn.2d at 479.

### A

### Existence of a Duty on the Part

### of Grays Harbor College

Grays Harbor College contends that nothing contained in common law, statute, or regulation imposed a duty upon it to enroll Samuelson in TIAA/CREF. Samuelson responds that Grays Harbor College had a duty under former WAC 131-16-

-030 to enroll him in TIAA/CREF unless he elected not to participate in the program. We agree with Samuelson.

 The standard of conduct required of a reasonable person may be prescribed by legislative enactment. *Hansen*, 118 Wn.2d at 479; *Young v. Caravan Corp.*, 99 Wn.2d 655, 659, 663 P.2d 834, 672 P.2d 1267 (1983). Washington courts follow the 4-part test from the Restatement (Second) of Torts § 286 (1965) for determining when the court may adopt a legislative enactment as a reasonable person's standard of conduct. *Hansen*, 118 Wn.2d at 480; *Young*, 99 Wn.2d at 659-60. The purpose of the enactment must be, in whole or in part, to protect: (a) a class of persons which includes the plaintiff; (b) the particular interest which is invaded; (c) that interest from the type of harm that resulted; and (d) that interest against the particular hazard that results from the harm. *Hansen*, 118 Wn.2d at 480-81 (quoting Restatement (Second) of Torts § 286 (1965)).

 According to former WAC 131-16-030, Samuelson was required to participate in TIAA/CREF when he was hired as a new employee, unless he specifically elected otherwise. RCW 28B.50.140(13) requires each community college board of trustees to enforce the rules and regulations prescribed by the State Board for Community College Education. Because Grays Harbor College was required to enforce former WAC 131-16-030, a rule promulgated by the State Board for Community College Education, it had a legal duty to enroll Samuelson in TIAA/CREF unless he elected to remain a member of PERS. Clearly the purpose of that regulation is to protect employees like Samuelson who might not know of their eligibility for TIAA/CREF.

Grays Harbor College contends that we may conclude, as a matter of law, that it did not breach any duty owed to Samuelson because Samuelson made an election, as required by the regulation, by remaining a member of PERS after he was hired. According to Grays Harbor College, because of this "election", it did not have to enroll Samuelson in TIAA/CREF. We disagree. The election required by the regulation means an informed choice. An employee cannot "elect" between two

benefit options unless he or she is at least informed of the options. Here, Samuelson merely maintained his membership in PERS because he was not informed that he had an option to do otherwise. An employee who has no information about TIAA/CREF and, as a result, naively assumes that he must remain a PERS member cannot be said to have made an election as required by the regulation. Whether, from a factual standpoint, Grays Harbor College's duty to Samuelson was breached remains to be determined by the trier of fact.[3]

## B

### Existence of a Duty on the Part of the State Board for Community College Education

The State Board for Community College Education and its executive director also contend that they owed no duty to Samuelson. We agree. Samuelson contends that their duty is created by RCW 28B.10.400. That section provides as follows:

> The boards of regents of the state universities, the boards of trustees of the regional universities and of The Evergreen State College, and the state board for community college education are authorized and empowered:
>
> (1) To assist the faculties and such other employees as any such board may designate in the purchase of old age annuities or retirement income plans under such rules and regulations as any such board may prescribe. . . .

(Reviser's note omitted.) RCW 28B.10.400.

Samuelson argues that this section creates a duty to "assist" him in the purchase of a retirement plan, and to make him fully aware of his options. This argument fails. Nothing in this section indicates that the state board, an oversight agency, or its director, has any duty to provide information to individual employees of the various community colleges. In fact, this statute is the legislative authority for the state board's regulatory creation of the TIAA/CREF program, which the individual colleges are required to enforce. Therefore, we

---

[3]Samuelson did not appeal the trial court's denial of his motion for summary judgment.

affirm the summary judgment in favor of the state board and its executive director.

## III

### CONCLUSION

We hold that Grays Harbor College, but not the state board, owed Samuelson a legal duty to enroll him in TIAA/CREF unless he elected to remain a member of PERS. We therefore affirm the summary judgment in favor of the State Board for Community College Education and its executive director, but reverse the summary judgment in favor of Grays Harbor College. We remand for trial on the issue of whether the statute of limitations had run on Samuelson's claim, and, if it had not, for a determination of whether Grays Harbor College breached the duty it owed to Samuelson. The trier of fact, of course, need not reach the liability issue if it finds that Samuelson's action is barred by the statute of limitations.

MORGAN, C.J., and HOUGHTON, J., concur.

Review denied at 125 Wn.2d 1023 (1995).