# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | |
|---|---|
| JONATHAN DEEGAN and ALICE O'GRADY, on behalf of themselves and others similarly situated, | No. 74353-8-I |
| Respondent, | |
| v. | |
| WINDERMERE REAL ESTATE/ CENTER-ISLE, INC., a Washington corporation; ACORN PROPERTIES, INC., d/b/a RE/MAX ACORN, INC., a Washington corporation, | PUBLISHED OPINION |
| Appellant. | FILED: February 21, 2017 |

VERELLEN, C.J. — When Jonathan Deegan and Alice O'Grady purchased their Whidbey Island homes, Windermere Center-Isle and RE/MAX Acorn (listing agents) provided Deegan and O'Grady limited warnings of airport noise, but not the extensive warnings required by Island County Code (ICC) 9.44.050.

Deegan and O'Grady filed a class action complaint under the Consumer Protection Act, (CPA) ch. 19.86 RCW, alleging the listing agents engaged in unfair or deceptive acts by omitting the detailed warnings required by ICC 9.44.050. The trial court granted the listing agents' CR 12(b)(6) motion to dismiss, concluding Deegan and

O'Grady had a legal duty to inquire and the statute of limitations had run on Deegan's claim.

Because the listing agents do not establish that Deegan and O'Grady had a duty to inquire and hypothetical facts, together with the applicable presumption of reliance, support the CPA claim, we conclude the trial court erred in dismissing the CPA claim under CR12(b)(6).

Additionally, because Deegan's complaint does not resolve when he knew or reasonably should have known the basis for his cause of action, the trial court erred when it concluded his claim is barred by the statute of limitations.

Therefore, we reverse and remand for further proceedings.

## FACTS[1]

Jonathan Deegan purchased a home on Whidbey Island in Island County in 2006. The listing agent was RE/MAX Acorn. Alice O'Grady purchased her home in 2011. The listing agent was Windermere Center-Isle.

Naval Air Station Whidbey Island consists of a seaplane base and Ault field. In 1992, the Island County Board of Commissioners (County Board) enacted ICC 9.44.050, requiring sellers and their agents to provide buyers with specific warnings about aircraft noise. The legislative purpose focuses on the health, safety, and welfare of citizens:

> The Board of County Commissioners of Island County has considered, among other things, the character of the operations conducted and proposed to be conducted at airports within Island County,

---

[1] Because this is an appeal from a trial court order dismissing claims under CR 12(b)(6), we focus on the facts as alleged in the complaint.

the current uses of surrounding property and the uses for which it is adaptable; the Board of County Commissioners finds:

    A. There exist airports within Island County whose operations may impact the health, safety and general welfare of the citizens of Island County.

    B. The purpose of this chapter is to protect the public health, safety and general welfare by providing for the full disclosure of the noise associated with the operation of aircraft from the existing airports.[2]

The ICC 9.44.050 disclosure statement provides:

    No person shall sell, lease, or offer for sale or lease any property within an airport environs mapped area[ ] unless the prospective buyer or lessee has been given notice substantially as follows:  TO:  The property at _____ is located within airport environs mapped impacted area.  There are currently 5 (five) active airport facilities in Island County.  The Oak Harbor Airpark, the South Whidbey Airpark, and the Camano Airpark are general aviation facilities and are identified on the attached map.  Ault Field and OLF Coupeville are tactical military jet aircraft facilities and are also identified on the attached map.  Both Ault Field and OLF Coupeville are used for Field Carrier Landing Practice (FCLP) purposes.  Practice sessions are routinely scheduled during day and night periods.

    Property in the vicinity of Ault Field and OLF Coupeville will routinely experience significant jet aircraft noise.  As a result airport noise zones have been identified in the immediate area of Ault Field and OLF Coupeville.  Jet aircraft noise is not, however, confined to the boundaries of these zones.

    Additionally, the noise generated by the single flyover of a military jet may exceed the average noise level depicted by the airport noise zones and may exceed 100 DBA.[3]

    More specific information regarding airport operation and aircraft noise can be obtained by calling the Community Planning Liaison Office at NAS Whidbey Island and the Island County Planning and Community Development Department.[4]

---

    [2] ICC 9.44.010.

    [3] ICC 9.44.030 ("DBA: The unit of corrected noise level measured in accordance with the 'A-weighting scale' which replicates the response characteristics of the ear.").

    [4] ICC 9.44.050.

ICC 9.44.060 states, "The obligation to comply with the provisions of this chapter [is] upon the property owner and their agents." In 1993, the County Board passed a second ordinance, the Noise Level Reduction Ordinance (NLRO).[5] The NLRO is part of the building code and contains noise abatement requirements that apply to any new construction in the affected areas. The NLRO also includes a map with two noise zones. The NLRO disclosure warns potential builders about construction restrictions and requirements in the zoned areas. The NLRO's disclosure statement, ICC 14.01B-100, provides:

> No person shall sell, lease, or offer for sale or lease any property within an airport noise zone 2 or 3 unless the prospective buyer or lessee has been given notice substantially as follows: To:
>
> The Property at _____
> is located within Airport Noise Zone 2 or 3 impacted area. Persons on the premises may be exposed to a significant noise level as a result of airport operations. Island County has placed certain restrictions of construction of property within airport noise zones. Before purchasing or leasing the above property, you should consult Island County Noise Level Reduction Ordinance to determine the restrictions which have been placed on the subject property, if any.

In 2005, the Navy began phasing out EA-6B Prowler jets, replacing them with the EA-18G Growler. "Over the following several years," community complaints about the jet noise increased.[6] Most complaints cited the increase in the frequency of flights, late night and early morning flights, and the increased noise from low flying Growlers.

---

[5] Island County Ordinance PLG-054-93 (October 11, 1993) (effective January 14, 1994). Amendments in 2002 did not alter the required disclosures.

[6] Clerk's Papers (CP) at 75.

A citizen's group commissioned a 2013 auditory study. According to Deegan and O'Grady, the noise levels "exceed the levels at which significant adverse health effects have been reported in the scientific literature."[7]

David Wechner, the Island County Director of Planning and Community Development, investigated and sent a memorandum to the County Board on December 17, 2013. Wechner noted that frequently-used Form 22W[8] did not include the language required by ICC 9.44.050. Form 22W also did not include the airport environs map showing locations of the aircraft facilities and the impacted areas.[9]

When Deegan and O'Grady purchased their homes, they received Form 22W containing "a generic airport notice indicating a significant noise level as a result of airport operations," but not the more extensive disclosures required by ICC 9.44.050.[10]

On November 14, 2014, Deegan and O'Grady sued the listing agents, alleging their failure to disclose material facts violated Washington's CPA.[11] Deegan and O'Grady specifically alleged the omitted information would have impacted their decision to purchase their homes and their obligation to disclose in any future sale would reduce their proceeds.

---

[7] CP at 75-76.

[8] CP at 69 (Form 22W was copyrighted by the Northwestern Multiple Listing Service in 2001).

[9] See CP at 88. The listing agents began using an updated version of Form 22W in January 2014, after Deegan and O'Grady purchased their homes.

[10] CP at 2 ("However, it did disclose that (i) the subject property was within an Airport Noise Zone 2 or 3 impacted area; (ii) persons on the premises may be exposed to significant noise level as a result of airport operations, and (iii) before purchasing the property, the buyer should consult the Island County Noise Level Redactions Ordinance.").

[11] CP at 82 (class certification is not at issue in this appeal).

The listing agents moved to dismiss under CR 12(b)(6). The trial court granted that motion and concluded the statute of limitations barred Deegan's claim.

Deegan and O'Grady appeal.

## ANALYSIS

We review a CR 12(b)(6) dismissal de novo.[12] CR 12(b)(6) dismissal is proper where "'it appears beyond doubt that the plaintiff can prove no set of facts, consistent with the complaint, which would entitle the plaintiff to relief.'"[13] "We regard the plaintiff's allegations in the complaint as true and consider hypothetical facts outside the record."[14] "Any hypothetical situation conceivably raised by the complaint defeats a CR 12(b)(6) motion if it is legally sufficient to support plaintiff's claim."[15] Because de novo review is based on the complaint and hypothetical facts, findings of fact by the trial court are superfluous.[16]

## I. CPA Claim

Deegan and O'Grady contend their complaint states a viable CPA claim. The CPA was adopted to protect the public from unfair or deceptive acts or practices in trade

---

[12] FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc., 175 Wn. App. 840, 865-66, 309 P.3d 555 (2013), aff'd, 180 Wn.2d 954 (2014).

[13] Id. at 865-66 (quoting Lawson v. State, 107 Wn.2d 444, 448, 730 P.2d 1308 (1986)).

[14] Id.

[15] Halvorson v. Dahl, 89 Wn.2d 673, 674, 574 P.2d 1190 (1978).

[16] Friends of N. Spokane County Parks v. Spokane County, 184 Wn. App. 105, 124 n.2, 336 P.3d 632 (2014) (findings of fact on CR 12(b)(6) ruling are "superfluous"); see CR 52(a)(5)(B) (findings of fact are not necessary for decisions on motions under CR 12).

or commerce and is to be liberally construed.[17] The CPA significantly differs from traditional common law standards of fraud and misrepresentation. It "replaces the now largely discarded standard of caveat emptor with a standard of fair and honest dealing."[18]

To prevail on a CPA claim, a plaintiff must show that the defendant engaged in an unfair or deceptive act or practice that occurred in trade or commerce, that affected the public interest, injured the plaintiff's business or property, and that there's a causal link between the unfair or deceptive act and the injury suffered.[19] "An unfair or deceptive act or practice need not be *intended* to deceive—it need only have 'the *capacity* to deceive a substantial portion of the public.'"[20] A "knowing failure to reveal something of material importance is 'deceptive' within the CPA."[21]

Causation under the CPA is a factual question to be decided by the trier of fact.[22] "[W]here a defendant has engaged in an unfair or deceptive act or practice, and there has been an *affirmative misrepresentation* of fact, our case law establishes that there

---

[17] Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc., 162 Wn.2d 59, 73, 170 P.3d 10 (2007).

[18] DAVID K. DEWOLF, KELLER W. ALLEN, & DARLENE BARRIER CARUSO, 25 WASHINGTON PRACTICE: CONTRACT LAW AND PRACTICE § 18:310.00, at 629 (3d ed. 2014); see Testo v. Russ Dunmire Oldsmobile, 16 Wn. App. 39, 51, 554 P.2d 349 (1976) (as with other trade law developments, the CPA is intended to "eliminate the 'gamesmanship' formerly attendant to the tradition of caveat emptor").

[19] Indoor Billboard/Wash., 162 Wn.2d at 74.

[20] Id. at 74-75 (quoting Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 785, 719 P.2d 531 (1986)).

[21] Id. at 75 (quoting Robinson v. Avis Rent A Car Sys., Inc., 106 Wn. App. 104, 116, 22 P.3d 818 (2001)).

[22] Id. at 83.

must be some demonstration of a causal link between the misrepresentation and the plaintiff's injury."[23] The plaintiff must establish that, but for the defendant's affirmative misrepresentation, the plaintiff would not have suffered an injury.[24] Reliance is one way to establish this causal link.[25]

But causation is different for omissions of material fact. This court recognized in Schnall v. AT&T Wireless Services, Inc. that a CPA claim based on an omission of material fact puts the person seeking relief "in the impossible position of proving a negative; that is, that they believed the opposite of the omitted fact when they made their purchase."[26] In view of similar problematic burdens, Washington courts have adopted a rebuttable presumption of reliance for omissions of material fact in franchise fraud[27] and securities fraud cases.[28] "While the Washington Supreme Court has never affirmed a presumption of reliance in consumer fraud cases involving material omissions, it has acknowledged that reliance is 'virtually impossible to prove' in cases

---

[23] Id. (emphasis added); see Schnall v. AT&T Wireless Servs., Inc., 171 Wn.2d 260, 278, 259 P.3d 129 (2011) ("but for" proximate causation applies to a CPA claim "based on an affirmative misrepresentation").

[24] Indoor Billboard/Wash., 162 Wn.2d at 84.

[25] Schnall, 171 Wn.2d at 280 (emphasizing that reliance is not necessarily essential to establishing causation under the CPA); see also Panag v. Farmers Ins. Co of Wash., 166 Wn.2d 27, 59 n.15, 204 P.3d 885 (2009) (questioning whether proof of reliance is necessary to establish causation).

[26] 139 Wn. App. 280, 291, 161 P.3d 395 (2007), aff'd in part, rev'd in part on other grounds, 171 Wn.2d 260 (2011); see also Panag, 166 Wn.2d at 59 n.15 (acknowledging Oregon case law that proof of reliance is "not necessary where deceptive act involves material omission").

[27] Morris v Int'l Yogurt Co., 107 Wn.2d 314, 328, 729 P.2d 33 (1986) (franchise fraud omission to disclose material fact).

[28] Guarino v. Interactive Objects, Inc., 122 Wn. App. 95, 119, 86 P.3d 1175 (2004) (securities fraud omission to disclose material fact).

involving nondisclosure of material facts."[29] Federal cases discussing the CPA acknowledge a rebuttable presumption of reliance for material omissions.[30]

Relying heavily on Douglas v. Visser,[31] the listing agents argue that Deegan and O'Grady's complaint did not satisfy the "deceptive practice" element of a CPA claim, and that once Deegan and O'Grady were put on notice of "significant" aircraft noise by Form 22W, they had a duty to make further inquiry.[32]

In Douglas, an inspector performed an inspection after the Douglases had already made an offer on a house.[33] The inspector reported rot and decay near the roof line, caulking that suggested a previous roof leak in the area, water damaged exterior siding, and rot beneath the house.[34] The Douglases received the report but did not discuss it with the inspector.[35] They sent the Vissers additional questions. The Vissers

---

[29] Blough v. Shea Homes, Inc., No. 2:12-CV-01493 RSM, 2014 WL 3694231, at *13 (W.D. Wash. July 23, 2014) (court order) (quoting Morris, 107 Wn.2d at 328).

[30] Kelley v Microsoft Corp., 395 F. App'x. 431, 433 (9th Cir. 2010) ("[W]e affirm the district court's denial of certification . . . on the theory that the . . . class is entitled to a presumption of reliance."); see also Kelley v. Microsoft Corp., No. C07-0475MJP, 2009 WL 973368, at *7 (W.D. Wash. Apr. 10, 2009) (court order) (discussing Washington case law consistent with rebuttable presumption of reliance in CPA omissions of material fact), aff'd in part, rev'd in part, 395 F. App'x. 431; Blough, 2014 WL 3694231, at *13 (recognizing rebuttable presumption of reliance for CPA omission to disclose); Grays Harbor Adventist Christian Sch. v. Carrier Corp., 242 F.R.D. 568, 573 (W.D. Wash. 2007) (applied rebuttable presumption of reliance in consumer protection context). See generally Jennifer Rust Murray, Proving Cause in Fact under Washington's Consumer Protection Act: The Case for a Rebuttable Presumption of Reliance, 80 WASH. L. REV. 245 (2005).

[31] 173 Wn. App. 823, 295 P.3d 800 (2013).

[32] Resp't's Br. at 7, 10.

[33] Douglas, 173 Wn. App. at 826.

[34] Id.

[35] Id.

did not answer. The Douglases purchased the home without further discussion.[36] After purchasing the house, the Douglases noticed significant issues with the home, including mold and defects that would cost more to repair than to rebuild.[37]

The Douglases sued the Vissers for fraudulent concealment, negligent misrepresentation, breach of real estate agent's duties, breach of contract, and violation of the CPA.[38] After a bench trial, the trial court made findings of fact and entered judgment for the Douglases.[39] This court held:

> Because the Douglases were on notice of the defect and had a duty to make further inquiry, it cannot be said that the defect was unknown to the Douglases, that it could not have been discovered by a reasonable inspection, that the Douglases justifiably relied on the Vissers' misrepresentations, *or* that the Vissers committed an unfair or deceptive act that *caused the Douglases' injury*.[40]

As to their non-CPA claims, this court reasoned the Douglases were on notice of defects and had a duty to make further inquiry because the inspector's report identified rot and decay near the roofline, an area of rotted sill plate, and sistered floor joists.[41] This court observed that "[o]nce a buyer discovers evidence of a defect, they are on notice and have a duty to make further inquiries. They cannot succeed when the extent of the defect is greater than anticipated, even when it is magnitudes greater."[42]

---

[36] Id.

[37] Id. at 827-28

[38] Id. at 828.

[39] Id. at 829.

[40] Id. at 834 (emphasis added).

[41] Id. at 831-32.

[42] Id. at 832.

The listing agents here argue <u>Douglas</u> imposes a duty of inquiry on Deegan and O'Grady for purposes of the CPA and supports the CR12(b)(6) dismissal. We disagree.

First, in <u>Douglas</u>, the trial court made its findings based on evidence presented at a bench trial, but here, we engage in de novo review of the CR 12(b)(6) dismissal on the pleadings and consistent hypothetical facts. The trial court's "findings" that Deegan and O'Grady had notice of a defect and that they "reasonably should have become aware of the frequency and loudness of the airport operations no later than a few months after [they] took ownership"[43] are superfluous and have no bearing on our de novo review.

Second, the references in <u>Douglas</u> to notice, knowledge of a defect, duty to make further inquiry, and justified reliance addressed the *fraudulent concealment*, *breach of real estate agent's duties*, and *negligent misrepresentation* claims.[44] The Douglases' CPA claim failed because they did not show that the Vissers committed an unfair or deceptive act "that *caused* the Douglases' injury."[45] Specifically, the duty to inquire as applied in <u>Douglas</u> is based on fraudulent concealment case law that defects are not actionable if they are apparent or would be disclosed by a careful, reasonable inspection.[46] The listing agents provide no compelling authority that the CPA imposes

---

[43] CP at 2 (Finding of Fact 5).

[44] <u>Douglas</u>, 173 Wn. App. at 834.

[45] <u>Id.</u> (emphasis added).

[46] <u>Id.</u> at 830-35 (discussing <u>Puget Sound Serv. Corp. v. Dalarna Mgmt. Corp.</u>, 51 Wn. App. 209, 210, 752 P.2d 1353 (1988), <u>Sloan v. Thompson</u>, 128 Wn. App. 776, 781, 115 P.3d 1009 (2005), and <u>Alejandre v. Bull</u>, 159 Wn.2d 674, 689, 153 P.3d 864 (2007)).

such a duty to inquire.[47] Douglas does not stand for the proposition that the CPA imposes a duty of inquiry.

Third, the alleged unfair or deceptive act here is an omission of the material facts identified in ICC 9.44.050. The listing agents suggest that Form 22W alerted the buyers to the issue of airplane noise, that "Washington has not abandoned caveat emptor in real estate" and that "[t]his is not a failure to disclose case."[48] But the CPA does reject caveat emptor. And the capacity to deceive here arises from the omission of the material facts set forth in ICC 9.44.050. "'Even accurate information may be deceptive if there is a representation, *omission* or practice that is likely to mislead.'"[49] The disclosures required by ICC 9.44.050 are of material importance. The complaint alleges a deceptive omission of material facts, and hypothetical facts support such a claim.

Fourth, because causation under the CPA for omission of material facts includes a rebuttable presumption of reliance, we must consider hypothetical facts consistent

---

[47] The listing agents rely on Klem v Washington Mutual Bank, where the court cited Federal Trade Commission provisions for an unfairness claim as support for the notion that "[c]urrent federal law suggests 'a practice is unfair [if it] causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits.'" 176 Wn.2d 771, 787, 295 P.3d 1179 (2013) (second alteration in original) (quoting 15 U.S.C.A. § 45(n)). But even considering such dicta, the "not reasonably avoidable" federal statutory provision has no application to deceptiveness claims. FTC v. Cantkier, 767 F. Supp. 2d 147, 152 (D.D.C. 2011). The other cases cited by the listing agents do not support a duty to investigate. See Mellon v. Reg'l Tr. Servs. Corp., 182 Wn. App. 476, 489-90, 334 P.3d 1120 (2014) (relying on Klem for one, but not the only, meaning of "unfair act or practice"); Davis v HSBC Bank Nevada, N.A., 691 F.3d 1152, 1168-70 (9th Cir. 2012) (discussing unfairness prong of California unfair competition law as applied to injury that may have been avoided if consumer had considered advertisement that "other restrictions may apply" and had completed application process.).

[48] Resp't's Br. at 23.

[49] Bain v Metro. Mortg. Grp., Inc., 175 Wn.2d 83, 115, 285 P.3d 34 (2012) (emphasis added) (internal quotation marks omitted) (quoting Panag, 166 Wn.2d at 50).

with such a rebuttable presumption.[50] We conclude that hypothetical facts consistent with Deegan and O'Grady's complaint establish an omission of material facts. The presumption of reliance allows the CPA claim to go forward based on the theory that the omission caused harm.

Fifth, the listing agents argue Deegan and O'Grady cannot establish the public interest element of a CPA claim.[51] In essence, they argue (1) the seller disclosure statute, RCW 64.06.020, requires that the seller of real property provide certain information "at a minimum"; (2) any disclosure imposed by the county is therefore governed by RCW 64.06; (3) RCW 64.06.060 explicitly states "the practices covered by this chapter are not matters vitally affecting the public interest for the purpose of applying the [CPA];" and (4) therefore, the lack of any public interest declared by RCW 64.06.060 precludes this CPA claim.[52] But their premise fails. A person may bring an independent CPA claim for a seller's omission of material fact in a real estate transaction that is unrelated to the disclosures required by the seller disclosure

---

[50] Unlike Douglas, 173 Wn. App. at 833, where the predominant act or practice was an affirmative concealment, here the alleged deceptive act or practice was an omission of material facts, triggering the rebuttable presumption of reliance.

[51] In a private contract setting, the public interest element may include consideration of the following nondispositive factors: (1) whether the alleged acts were committed in the course of defendant's business; (2) whether the acts were part of a pattern or generalized course of conduct; (3) whether repeated acts committed prior to the act involved plaintiff; (4) whether there is a real and substantial potential for repetition of defendant's conduct after the act involving plaintiff; and (5) if the act complained of involved a single transaction, whether many consumers were affected or likely to be affected by it. Rush v. Blackburn, 190 Wn. App. 945, 969, 361 P.3d 217 (2015) (quoting Hangman Ridge, 105 Wn.2d at 790).

[52] Resp't's Br. at 26-28.

statute.[53] The omission alleged here is independent of, and unrelated to, the requirements of the seller disclosure statute. The listing agents do not provide compelling authority that the disclosure mandated by ICC 9.44.050 is subject to or preempted by RCW 64.06. In this setting, the disclosure requirements of RCW 64.06.020 do not preclude a CPA claim for unfair or deceptive omissions of material facts regarding the volume, intensity, frequency, and timing of military jet noise.

Finally, the listing agents do not offer compelling authority to support their other arguments. The alleged omission of material information as required by ICC 9.44.050 has the capacity to deceive. The complaint does not purport to allege a per se CPA violation. ICC 9.44.050 does not purport to legislate CPA liability and is not beyond the authority of the county. ICC 9.44.060's provision that the ordinance is not intended to benefit any particular persons does not preclude a CPA claim for a deceptive failure to disclose material facts. And judicial notice of public documents allowed on CR12(b)(6) review[54] does not extend to nondocumentary general information asserted to be well known in the community.

Therefore, viewing the alleged omissions of material fact and consistent hypothetical facts, the complaint adequately alleges an unfair or deceptive act or

---

[53] See Svendsen v. Stock, 143 Wn.2d 546, 557-60, 23 P.3d 455 (2001) (RCW 64.06.070 did not extinguish a buyer's common law or statutory cause of action. Prior to enactment of chapter 64.06 RCW, real estate agents were subject to CPA liability for not disclosing known material defects. RCW 64.06.070 preserves an independent cause of action under the CPA against a seller when fraudulent concealment is not connected to the seller disclosure statute. An agent's failure to disclose can be sufficient to establish the public interest requirement of the CPA.).

[54] See, e.g., Jackson v. Quality Loan Serv. Corp., 186 Wn. App. 838, 844-45, 347 P.3d 487 (2015) ("allegations in a complaint on specific documents" but not attached to the complaint may be considered on a CR12(b)(6) motion).

practice, in trade or commerce, affecting public interest. The listing agents do not establish a duty of inquiry. And, in view of the rebuttable presumption of reliance applicable to an omission of material fact, there are adequate allegations that the omissions caused Deegan and O'Grady harm. The trial court erred in dismissing Deegan and O'Grady's CPA claims under CR 12(b)(6).566

## II. Statute of Limitations

Alternatively, RE/MAX argues, even if Deegan made a prima facie case under the CPA, the statute of limitations barred his claim.

A plaintiff must bring a CPA claim for damages within four years after the cause of action accrues.[55] Generally, a claim accrues "when a party has the right to apply to a court for relief."[56] A party has the right to apply to a court for relief when it "'can establish each element of the action.'"[57]

The discovery rule of accrual applies where "'injured parties do not, or cannot, know they have been injured.'"[58] Under the discovery rule, "'a cause of action accrues when the plaintiff, through the exercise of due diligence, knew or should have known the basis for the cause of action.'"[59]

---

[55] RCW 19.86.120.

[56] 1000 Va. Ltd. P'ship v. Vertecs Corp., 158 Wn.2d 566, 575, 146 P.3d 423 (2006).

[57] Shepard v. Holmes, 185 Wn. App. 730, 739, 345 P.3d 786 (2014) (quoting Hudson v. Condon, 101 Wn. App. 866, 874, 6 P.3d 615 (2000)).

[58] Id. (quoting In re Estates of Hibbard, 118 Wn.2d 737, 744-45, 826 P.2d 690 (1992)).

[59] Id. (quoting Green v. Am. Pharm. Co., 86 Wn. App. 63, 66, 935 P.2d 652 (1997), aff'd, 136 Wn.2d 87 (1998)).

RE/MAX contends Deegan's claim lapsed because the predicate facts were public knowledge and therefore, the action accrued when he purchased in 2006. RE/MAX cites Shepard v. Holmes, where Division Three of this court held the purchaser had constructive notice of a consolidation deed, thus, her misrepresentation and CPA claims accrued at the time of purchase.[60] The court reasoned that because the consolidation deed affected title to the property, the plaintiff was on constructive notice of the existence of the consolidation deed when she purchased her property in July 2007, not when she decided to sell in 2011.[61]

Unlike Shepard, the question here is when Deegan had knowledge of the omitted disclosures required under ICC 9.44.050. Washington law generally presumes that people know the applicable laws.[62] But that doctrine is not applied to frustrate the purpose of the discovery rule. Where knowledge of the law itself is critical to learning of an omission of material fact, the discovery rule operates to toll the statute of limitations until a plaintiff knows or reasonably should have learned about the omitted material facts.[63]

---

[60] 185 Wn. App. 730, 736-38, 345 P.3d 786 (2014).

[61] Id. at 734-35, 740-42.

[62] See Hutson v. Wenatchee Fed. Sav. and Loan Ass'n, 22 Wn. App. 91, 98, 588 P.2d 1192 (1978) ("The presumption that people know the law most frequently applies to criminal cases; it is more properly stated that one may not escape criminal liability by claiming ignorance of the law.").

[63] See Samuelson v. Cmty. Coll. Dist. No. 2, 75 Wn. App. 340, 346-47, 877 P.2d 734 (1994) (presumption that people know the law and are thus charged with the contents of all regulations does not operate to defeat the discovery rule; it is for the trier of fact to determine the point when individuals through due diligence should have discovered their legal eligibility for government benefits and their tort claims for such benefits accrued).

As alleged in the complaint, it is unresolved when Deegan, through due diligence, knew or should have known the basis for his CPA cause of action. Therefore, we reverse and remand for further proceedings.

WE CONCUR: